ISRAEL BOREN v. THE STATE.

*No. 175. Decided March 17.*

1. **Indictment—Name of Defendant—Idem Sonans.**—In an indictment for murder, where the christian name of the accused was stated to be "Isreal," and defendant made a motion to quash the indictment upon the ground that his name being "Israel," and not "Isreal," he had never been indicted, and therefore could not be prosecuted under the same, *held*, that "Isreal" and "Israel" are idem sonans, and that bad spelling will not vitiate an indictment.

2. **Same—Quære—Change of Indictment where Defendant Suggests a Different Name.**—See quære suggested by the court as to the validity of an indictment which has been changed under the provisions of article 513, Code of Criminal Procedure, with reference to the name of the accused.

3. **Amendment of Date of Filing the Indictment.**—Where the minutes of the court showed that the indictment was presented in court on the 12th day of June, 1891, but the clerk had endorsed the same as filed 12th day of June, 1897, *held*, that the court properly permitted the clerk to change the file mark from "1897" to "1891;" and further, that the failure of the clerk even to file the indictment at all would be no ground for its quashal.

4. **Murder—Charge on Murder of the Second Degree, where Evidence Shows only Murder of First Degree — Insanity. —** On a trial for murder, where the evidence discloses a murder of the first degree or no crime on account of the insanity of the accused, *held*, that a charge upon murder of the second degree, if not demanded by article 607, Penal Code, was nevertheless clearly beneficial to defendant, and he could not be heard to complain thereof.

5. **Same—Charge Wrong but Beneficial to Defendant—Practice on Appeal.**—If it affirmatively appears that a charge was beneficial to the accused, the judgment will not be reversed on appeal, though it may be wrong.

On the other hand, if there be doubts as to any injury or not, the judgment will be reversed. If it was calculated to mislead the jury, etc., the judgment will be reversed.

**6. Charge—Insanity.**—See opinion for criticism of Presiding Judge HURT upon a portion of the charge of the court upon insanity.

**7. Same—Requested Instructions—Delusions.**—Where the charge of the court is full and explicit on the subject of insanity, it is not error to refuse a special instruction upon the subject of insane delusions. If a person is deluded, he is insane: if insane, he is deluded.

**8. Insanity—Burden of Proof.**—Where the defense is insanity, the burden is on the defendant to prove his insanity by a preponderance of evidence.

**9. Same—Conflicting Evidence— Practice on Appeal.**—Where the evidence is conflicting on the only issue in the case (insanity), the court on appeal will not reverse the judgment.

APPEAL from the District Court of Collin. Tried below before Hon. T. J. BROWN.

On a trial under an indictment charging him with the murder of Sid Nance, appellant was convicted of murder of the second degree, the punishment being assessed at imprisonment in the penitentiary for a term of ten years.

The indictment is as follows: "In the name and by the authority of the State of Texas: The grand jurors for the county of Collin, State aforesaid, duly organized as such at the June Term, A. D. 1891, of the District Court for said county, upon their oaths in said court present, that Isreal Boren, on or about the 3rd day of April, 1891, in the county of Collin and State of Texas, did then and there unlawfully, with malice aforethought, kill Sid Nance, by striking him with an axe. Against the peace and dignity of the State."

Defendant's motion to quash the indictment was substantially as follows:

"In the District Court of Collin County, Texas, June Term, 1891. And now at this term of the court comes the defendant, and moves the court to quash the indictment exhibited against him herein, and he also asks that said indictment be set aside and held invalid, for the following reasons, to-wit: The same does not charge the defendant with any offense known to the law. He specially excepts thereto for the following reasons: The same is in violation of the rights, privileges, and immunities guaranteed to this defendant under sections 10 and 19, of article 1, of the Constitution of the State of Texas, in the following particulars:

" 1. The same appears to be an indictment against another and different person from this defendant, the name of this defendant being Israel Boren, and not ' Isreal Boren,' as therein stated.

" 2. The same does not appear to have ever been filed in this court, nor in any other court, by a grand jury, and does not appear to have been the act of a grand jury.

" 3.  The same does not appear to have ever been presented in the District Court of Collin County, and purports to have been the act of the grand jury for said county, and it does not appear that it was ever filed in open court.

" 4.  The same appears to have been filed in this court (if filed at all) at an impossible date, to-wit, ' the 12th day of June, 1897.'

" 5.  The same does not disclose to this defendant ' the nature and cause of the accusation against him,' in this, it charges a conclusion and does not set out the facts constituting the offense.  It does not charge that the defendant inflicted any wound, mortal or otherwise, upon the deceased, nor does it describe its location.  It does not charge that Sid Nance is dead, nor that he died within a year and a day from the time of the infliction of the wound.  It does not appear that said indictment was the act of or was presented by any grand jury duly empanelled, charged, or sworn according to law."

This motion to quash was overruled.

The testimony in this case shows, that the appellant, at the time of the homicide, was 86 years of age, was totally blind in one of his eyes, and could see but little out of the other, was lame in one of his legs, had been ruptured many years, and was at the time suffering from heart disease, with which he had been afflicted and for which he had been treated medically for several years.

Sid Nance, the deceased, was a young man 19 years of age, who, about four months before he was killed, had come from Lamar County.  He was living with his relative, Noah Nance, and his wife, who lived in a house belonging to defendant; and defendant and his daughter, Melvina, and a young man by the name of Ed Hildreth, also lived in the same house. The testimony, as disclosed in the statement of facts, fails to show definitely the real cause of the killing.

The defense was insanity, and upon this issue many witnesses testified that defendant had been insane for a number of years; and on the other hand, many testified to his sanity, and that they had never heard of his insanity until after the homicide.  It would be profitless to reproduce the testimony on this issue.

The facts immediately attendant on the killing are shown by the testimony of .Mrs. Crissie Nance, as follows:  I am a granddaughter of defendant, and am the wife of Noah Nance, and live in Lamar County.  I lived in Collin County with my grandfather in 1891.  I knew Sid Nance. He was 19 years old at the time of his death.  He came to live with us in January, 1891, and was killed the 2nd day of April following.  My husband was in Lamar County at the time of the killing, having gone there the Friday previous.  My husband left deceased in charge of everything when he went to Lamar County.  On the Tuesday before the killing, defendant told Sid the best thing he could do was to leave, and Sid said,

"All right," but he asked defendant to let him remain until Noah came back, and the defendant told him he could. I don't know how this conversation came up, but this was all of it I heard. Bill McCarley, Ed Hildreth, deceased, and myself all went to the dance the night of the killing. When we left home no one was there but Melvina Harrington. The defendant had told me that evening that if I wanted to go to the dance to do so, as there was no use in my staying at home unless I wanted to, and if I wanted to go to the dance he would go over to Jack Boren's and stay all night.

We returned from the dance about 1 or 2 o'clock that night, and I went into the house first; the deceased and Ed Hildreth came in about the same time. Defendant got up and opened the door for me to come in. He had a big fire on when we got back. Ed Hildreth and deceased went upstairs, and went to bed together. A little before daylight the next morning I heard struggling and something pouring down on the floor like water. Ed Hildreth called me, and I got up and started upstairs, and when I got to the door I met the defendant. He told me he had a damned notion to knock me in the head, and drew his axe back, and I told him not to do it. He said, "You don't do what I tell you; I will kill you;" and I said that if he would not I would do anything in the world he said. I then told him he had killed Sid without a cause, and he said he had done it in self-defense, and if I said anything more he would kill me. I had been then married over three years; had been on defendant's place over a year at the time of the killing. After I had the conversation as stated with defendant, I went on upstairs and stayed there awhile, and defendant called to Ed Hildreth, and told him to come down and go tell Jack Boren and Pearce Hildreth to come over; that "By God, that old Is. was still alive." Defendant, before he said this, took his gun and shot it off twice, and then his pistol and fired it one time. Jack and Pearce Hildreth came, and Hildreth asked to go upstairs, and defendant said, "No, not until the inquest is held." This all occurred in Collin County.

Melvina Harrington is a daughter of defendant. She is not here at the trial. I never heard her say or do anything that morning. She is deaf, but her mind is as good as one would expect from a deaf person. She can not hear anything. The roads were muddy and disagreeable. The dance was at Graves'. Sid sat down before the fire, and defendant asked him what kind of a time he had had at the dance; and he said they had a very pleasant time, and defendant said he was very glad of it.

Being cross-examined, she said: When I heard the noise and started upstairs, I met the defendant at the door, and I said, "Grandfather, what did you kill Sid for?" and he said, "I killed him in self-defense." I said, "You know you killed him without any cause;" and he said, "I have a d——d good notion to kill you," and drew his axe back, and I

begged him not to do it. I was not surprised at defendant's being back when I got back home. When Melvina was alone, and the wind got up, he would always go home; said she was careless, and he was afraid she would let things get burned up. I have never told any one that defendant was going crazy. I don't know of any cause why he killed Sid Nance. I never told Jack Boren, nor his wife, at any time or place, nor I never told any other person, that defendant was going crazy. I don't know anything about the defendant riding about at night. His health is about as good as is usual for a man of his age. He can hear when he is addressed loud. He is ruptured, and has been for a long time, and complains of one of his legs on account of the rupture. He can not see out of but one eye. He had been taking medicine for heart disease for a long time; took two kinds of medicine—valerian and digitalis. I never had any difference with the defendant, except such as is usual in families. I have heard the defendant speak well of Sid Nance. He told Sid he was right to go to school and make a man of himself. My feelings towards defendant are not kind. I feel as if he was not my grandfather, and if he is hung, I think I have nerve enough to see him hung. Sometime before the killing defendant found a letter under the door, which he said was signed by a man named Faires. This was about the last of March or first of April. There was a bois d'arc tree stood in the yard, and I asked him to cut it down because the leaves caused the yard to get dirty. I never told him any one could climb up that tree and shoot him. I never heard anything about his being insane until after the killing. Grandfather sent Uncle Jack after the officers on the morning of the killing. No one attended to grandfather's business but himself. He piddled around the house, and chopped wood, and cleared up, but he did no farm work. I did not think the defendant was insane.

*Jenkins & Pearson* and *Throckmorton & Garnett*, for appellant.—1. The court erred in receiving the evidence of the deputy clerk, and in permitting the indictment to be corrected, so as to make it appear as filed in the District Court on the 12th day of June, 1891, and not as it had been written thereon, "filed on the 12th day of June, 1897."

The entry upon the minutes of the bringing in of the indictment into court by the grand jury is the only legal evidence of the return of the indictment, the returning of the bill into court being a judicial act.

No legal evidence existing that the pretended bill of indictment was found by the grand jury, the defendant could not be legally tried upon it, nor can he be punished, more than if the indictment had not been found a true bill, and merely filed by the county attorney.

The indictment upon which the defendant was tried is against "Isreal Boren." The bill of exception shows that it had been filed on the 12th

day of June, 1897, and it was so written on the back of the bill until the court had it corrected. The minutes of the court read as follows: "Friday, June 12, 1891. Now on this day came into open court the grand jury of Collin County, and presented and delivered to the judge presiding the following bills of indictment, duly signed by their foreman as true bills, to-wit, number 4100, The State of Texas v. Isreal Boren, murder." The court received parol evidence, over objections made at the time, that this extract from the minutes had reference to the bill against Isreal Boren, marked filed in 1897, upon which in fact the defendant was tried. This error was called again to the attention of the court in the eighth ground of defendant's motion to grant him a new trial. Code Crim. Proc., arts. 414, 415; Hardy v. The State, 1 Texas Cr. App., 557; English v. The State, 18 S. W. Rep., 678; Strong v. The State, 18 Texas Cr. App., 19.

2. The court erred in requiring defendant to plead to the indictment with the name set out in it as "Isreal Boren," after the defendant had set out in his motion to quash that his name was "Israel Boren;" the name in the indictment should have been changed under article 513 of the Code of Criminal Procedure.

The first special exception to the indictment was because it appeared to be against another and different person than defendant, it being against one "Isreal Boren," and that the defendant's name was "Israel Boren." The motion of the county attorney only extended to the correction of the file mark on the bill. The bill of exceptions given by the court, number 1, shows that the court ordered the name to be changed in the bill. The name was in fact never changed, and the bill is correctly copied into the transcript, charging "Isreal Boren" with the commission of the offense. Wardlow v. The State, 18 Texas Cr. App., 356; Plumley v. The State, 8 Texas Cr. App., 530.

If article 513 of the Code of Criminal Procedure is an infringement of the "guarantees secured to the citizen" in criminal prosecutions by section 10, article 1, of the Constitution, then the indictment, being against a different person than the defendant, was a nullity, and the motion to quash should have been sustained.

If article 513 is constitutional, and the Legislature could prescribe that a prosecution could be had upon an indictment partly found by the grand jury and partly prepared by some other agency, then the article referred to is mandatory upon the court; and when the suggestion is made, the court must see to it that the same is noted upon the minutes of the court, that the indictment is corrected by inserting therein the name of the defendant as suggested by himself, that the style of the cause be changed so as to give his true name, etc.

The minutes of the court show that the motion to quash was in all things overruled, and that the court ordered the file mark changed on the

bill; but it nowhere in this record shows that the defendant's name was corrected as he suggested it to the court, nor that any entry of this fact was made or noted on the minutes of the court. Myatt v. The State, 21 S. W. Rep., 256.

3. The court erred in refusing to quash the indictment after it had been corrected with reference to the time of filing, so as to show that it was filed in 1891, and not in 1897, when the defendant's motion to quash it was then called to the attention of the court; for the reason that the indictment so reformed and corrected was then not the act of the grand jury, and a trial under the same was not a trial under due process of law.

4. The court erred in charging the jury in reference to murder of the second degree. There was no proof in this case upon which murder of the second degree could be based. If the defendant was responsible and amenable to punishment at all, he was guilty of murder of the first de- gree. The defendant excepted to the charge of the court given the jury at the time of the trial, for this reason. Code Crim. Proc., art. 685; Ni- land v. The State, 19 Texas Cr. App., 174; Levine v. The State, 22 Texas Cr. App., 685; Miller v. The State, 28 Texas Cr. App., 446; White v. The State, 17 Texas Cr. App., 188; Tittle v. The State, 30 Texas Cr. App., 600.

The balance of the able brief is devoted to a discussion of the supposed errors in the charge of the court, together with an argument to show that the defense of insanity was fully established for defendant.

*R. L. Henry,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—The name of the accused as stated in the indictment is "Isreal," not "Israel," Boren—Israel Boren being his true name. This being the case, counsel for appellant moved to quash the indictment. The motion to quash was overruled. The objections of counsel were, that the accused must be indicted before he can be tried for a felony; that the name of appellant being in fact Israel Boren, he could not be tried upon an indictment charging Isreal Boren with the murder; that such an indictment is not a charge against him; and that therefore he has never been indicted by a grand jury for the murder of Sid Nance.

We answer, that Isreal and Israel are of the same sound; that bad spell- ing will not vitiate an indictment; and that therefore it appears from the indictment that the grand jury had indicted the appellant for the murder of Sid Nance.

Whether article 513 of the Code of Criminal Procedure is an infraction of the guarantees secured to the citizen in criminal prosecutions by section 10, article 1, of the Constitution, is not raised in this case. Under a certain state of case, the question attempted to be raised might be quite serious.

Suppose that the indictment alleged that John Smith committed the murder, and suppose that William Jones was arraigned and called upon to plead to the same.   He suggests to the court that his name is not John Smith, but William Jones, and objects to being required to plead to and be tried upon such an indictment; and that in fact his name is William Jones, and not John Smith, and that he proposed to prove by some of the grand jurors that he was not intended to be indicted.   Should the court hear the proposed evidence?   Suppose the proof made shows that the accused is not the man intended to be indicted; must the court require him to plead, the indictment in the meantime being amended, under provisions of article 513 Code of Criminal Procedure, so as to make it charge William Jones with the crime?   If the accused must plead to and be tried upon such an indictment under such a state of case, would he be tried upon an accusation of a grand jury; or would he not be tried upon the accusation of the court or its officers?   These observations by the way. This question is not before us; and we have enough nice questions presented in a legitimate way, without speculating as to those not raised.

The minutes of the court read:   "Tuesday, June 12, 1891.   Now on this day came into open court the grand jury of Collin County, and present and deliver to the judge presiding the following bills of indictment, duly signed by the foreman as true bills, to-wit, number 4100, The State of Texas v. Isreal Boren, murder."   With these minutes before the court, the clerk was permitted to change the date of filing the indictment from the 12th day of June, "1897," to 1891, so as to correspond with the correct date.   In this there was no error.   Suppose, the minutes showing an indictment had been properly presented by the grand jury, the clerk should, intentionally or otherwise, neglect to file the same, would this defeat the action of the grand jury?   Would it be ground upon which to quash the indictment?   Certainly it would not.

Counsel for the appellant object to the charge of the court with reference to murder of the second degree; first, because the court instructed upon murder of the second degree, contending that there was no evidence presenting this degree; that if the homicide was culpable, it was murder of the first degree and nothing less; second, counsel object to this expression in the charge upon express malice, " but from every unlawful killing the law implies malice."

We agree with counsel, that this homicide was murder of the first degree, or no offense whatever.   If appellant was not insane, this was a cold-blooded murder; if he was, the homicide was excusable.   The issue was made so by all the evidence—sanity or insanity.   On such a state of case a charge upon murder of the second degree was (if not demanded by article 607 of the Penal Code) clearly beneficial to appellant; and so was the statement, " that malice is implied from an unlawful killing."   This

expression, abstractly wrong, authorized the jury to convict of murder of the second degree, and for which appellant, if guilty, should not complain.

We are aware that opinions of this court hold, that if the charge is wrong, and is excepted to at the time, a reversal must follow, whether there be injury or not. Now we desire to state, that if it affirmatively appears that the charge was beneficial to the accused, the judgment should not be reversed, though it may be wrong. On the other hand, if there be any doubt as to any injury or not, it should. If it was calculated to mislead the jury, it should.

We have with the greatest scrutiny repeatedly read the charge of the court on the subject of insanity; read it in the light of the objections made to it. But we must say, that the objections urged are not well taken when tested by the opinions of this court. The writer has many objections which could be urged to the principles contained therein. But my views on this subject have not prevailed, and I will urge them no longer, though unshaken in the belief of their soundness.

One extract from the charge will suffice to illustrate the patent inconsistency of the propositions of law contained therein. The learned judge charged the jury: " If you have found that the evidence in this case establishes beyond a reasonable doubt that the defendant killed Sid Nance as charged, under circumstances which would make him guilty of murder in the first or in the second degree, then in order for the defendant to be exempted from punishment for the crime he committed, if any, upon the ground of his insanity, it devolves upon him, the defendant, to establish by a preponderance of the evidence that at the time the crime was committed he was insane to that degree that will exempt him from punishment as explained in the following charges."

Now, if appellant in killing Sid Nance was guilty of murder of the first or second degree, no degree of insanity could excuse him. If he, with his express or implied malice, killed Nance, he may have been when he killed him a drivelling idiot, yet he would have been guilty of murder, and his idiocy would not and should not excuse the murder. But how it is possible for an insane man to kill another with his malice aforethought, either express or implied, I can not comprehend.

Appellant, by counsel, assigns error in the action of the court in rejecting special instructions to the effect, that if appellant was prompted by an insane delusion when he killed deceased, then he would be excused. The court instructed the jury fully on the subject of insanity. If a person is deluded, he is insane; if insane, he is deluded. We are not treating of illusions or hallucinations. The evidence is conflicting with regard to the only issue in the case, viz., insanity. The jury decided this issue against appellant, and we can not say that the verdict is not supported

by the evidence.    The burden was on defendant to prove insanity by a preponderance of the evidence.    His triers say that he failed to do this, and we can not say they were wrong.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.