FLOYD HUSTON *v.* STATE.

[62 South. 421.]

CRIMINAL LAW. *Murder. Manslaughter. Instructions. Harmless error. Appeal.*

Where on the trial of a defendant charged with murder the evidence for the state showed that defendant was guilty of murder and the evidence for the accused showed that he was innocent, and defendant was convicted of manslaughter he cannot complain of an instruction authorizing the jury to convict of manslaughter as in such case the jury by their verdict necessarily found that the evidence of the accused was untrue and that the evidence of the state was true and no one was injured but the State, the defendant escaping punishment for the graver crime.

APPEAL from the circuit court of Marshall county.
HON. H. K. MAHON, Judge.

Floyd Huston was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*W. A. Belk,* for appellant.

Appellant is guilty of murder or nothing. If the state's evidence was sufficient to develop any theory at all it was to the effect that Floyd Huston, the appellant, without any provocation whatever sought Harris, interrogated him about his hat, accused him of being responsible for the loss of some money, rubbed his pistol under Harris' nose, shoved him back and shot him at a time when Harris was doing nothing whatever to Huston. Yet the state asked for and received a charge of manslaughter. I fail to see the slightest element of manslaughter in this case. As Judge COOK has so well said in *Parker* v. *State,* 58 So. 979: "There is no half way ground here; no debatable question, except the defendant's guilt or innocence of murder." It seems that in reaching such a verdict the jury "struck a balance by crediting the defendant with self defense and then debting him with murder, and by this process finding him guilty of manslaughter" to again quote from Judge COOK in the *Parker case, supra.*

Wherefore we insist that it was fatal error for the state to have been given this charge on manslaughter. As said by Judge CAMPBELL in *Virgil* v. *State,* in 63 Miss. 320 in discussing this question: "The danger from such an instruction is that the jury took license from it to find a verdict for manslaughter upon testimony on which it would shrink from rendering a verdict of guilty of the higher crime charged.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

As to the sixth assignment of error, second division of the argument in the brief of appellant, that the appel-

lant is guilty of murder or nothing, I submit that it is wholly untenable. The deceased in his dying declaration said that Floyd Huston accused him of bringing a man over there that beat him out of his money and rubbed a pistol in his face and shot him. This, taken in connection with the testimony of the defense that Harris cursed the appellant as he is claimed to have cursed him and coupled with the other circumstances in evidence would, under some phases, constitute manslaughter. The jury does not have to believe the one theory and discard the other entirely, but they can accept such parts of the testimony of the state as they may believe to be true and accept such part of the defendant's testimony as they may believe true, and render a verdict on such testimony though neither the theory of the defendant or the state is accepted as an entirety. In this case, the jury might believe that the deceased used the language attributed to him by Huston and they may have believed that Huston shot him in the heat of passion and not from cold, deliberate design to murder. The jury had a right to accept the theory of the state as an entirety if they believed it beyond a reasonable doubt, and they had a right to accept the theory of the defendant if they believed it, or they had a right, if they believed from the evidence that Huston provoked the difficulty and if the deceased resented the insults heaped upon him and did actually draw his pistol and shot for fear of danger by Huston, to find him guilty of manslaughter, because the appellant would not be justifiable in shooting even in self defense if he started the difficulty and then shot to save his life. He had to be free from blame for bringing on the difficulty or else he had to try to abandon the difficulty to the utmost of his ability under the circumstances before he could enjoy the right of self-defense. Suppose the jury did believe that Harris said that he would shoot any man that accused him of stealing a hat, and suppose that

Huston shot him for such statement when Harris was doing nothing and making no overt act to do any harm to him; that might be a sufficient statement, considering the language that Huston attributes to Harris to influence the passion of a man in good standing in society to such an extent as to reduce the killing from murder to manslaughter but when this is considered in connection with the instructions that the defendant obtained telling the jury that they must acquit unless the evidence convinced them beyond a reasonable doubt and to the entire satisfaction of the jury. The jury might have been influenced by this set of instructions telling them that they could not convict of murder unless they not only believed him guilty beyond a reasonable doubt but also that it must be to the entire satisfaction of the jury. It would be a strange view for the court to take, and is a strange view for counsel to take that the jury must accept absolutely the theory of the one or the other. The evidence of one side may modify the evidence of the other side. It may be that the jury does not believe entirely all the testimony on either side and they may have taken the several parts of the evidence and considered them together; and certain theories and facts in this case that would make manslaughter. Our statutes have reduced certain offences at common law to manslaughter and the circumstances under which cases may constitute manslaughter are very diversified. Our statutes undertake to announce specifically a great many phases of killing and pronounce them murder, some justifiable, some excusable and some manslaughter, but the specific statutory declaration by the concluding section of manslaughter in sweeping terms declares that every killing not governed by the express provisions of the Code, shall constitute manslaughter. It is exceeding difficult to draw the line between murder and manslaughter. Especially is this true where killings occur in hot blood where the

parties are more or less influenced by liquor and where each party knows the other to be dead game and knows that any trifling might result in serious consequences. A man may misjudge his right to take human life; he may honestly think in his own mind that he has a right to take life, but if the facts and circumstances surrounding him are not such that a man reasonably has a right to do so, he is not justified. What he might term reasonable, or what he might think reasonable, might not meet the standard of reasonableness required by the jury, and in such cases, the offense would be manslaughter, because a man would be acting on an honest belief of a right to take life and would not be guilty of the cold and deliberate malice necessary to constitute murder, and every unlawful killing that is not malicious and premeditated is manslaughter and not murder.

The statutes of what constitute murder and manslaughter are so diversified that the court should accord to the jury the widest latitude in determining these facts. Besides, if a killing is not justifiable, even if it is deliberate and cold-blooded murder, and the jury convict the defendant of the unlawful offense of manslaughter, he cannot be heard to complain because, if there is any error it is error in his favor, and certainly the court will not give him the benefit of error in his favor. I think that the court has gone wide of the mark in reversing cases for manslaughter charge because it is difficult to see how it could be hurtful to the defendant. It mitigates his punishment, if anything, because wherever the jury believe that he is not justifiable, we cannot assume that they are disposed to hesitate in holding a man to accountability when he is not justified in killing. The court ought not to substitute its judgment for that of the circuit judge and of the jury, if by any possible hypothesis, the defendant is guilty of either charge. If the testimony shows him to be guilty of murder and he is convicted

of manslaughter, it is certain that the jury has found that he was not innocent. See *Daniel Moore* v. *State*, 86 Miss. 160-171.

On the proposition that the jury may accept part of the state's testimony and part of the defendant's, see *Levi Pope* v. *State*, decided May 5, 1913.

In the case of *Virgil* v. *State*, 63 Miss. 320, the court especially shows that where the evidence makes a possible theory of manslaughter that the court may rightfully submit manslaughter instructions. It is only according to the court, in that class of cases where there was no possible theory of manslaughter that it is error to submit to a jury such instructions.

Argued orally by *Lee M. Russell* for appellant and *Geo. H. Ethridge*, assistant attorney-general, for the state.

COOK, J., delivered the opinion of the court.

The evidence for the state shows that the defendant was guilty of murder. The evidence for the defendant shows that the defendant was guiltless of any crime— that he did not kill deceased at all, and did not aid, abet, or encourage the homicide. The defendant should have been convicted of murder, if the jury believed the state's evidence; but, if they entertained a reasonable doubt of the truthfulness of the state's theory, the verdict should have been not guilty.

Upon this state of the record, and at the request of the state, the court instructed the jury as follows: "The court charges the jury, for the state, that if they believe from the evidence in this case beyond a reasonable doubt that the defendant unlawfully, not in necessary self-defense, without malice aforethought, but in a sudden heat of passion, killed Harvey Harris, with a dangerous weapon, the jury can convict the defendant of manslaughter only; and, should the jury convict the defendant of manslaughter, the form of their verdict will be: 'We,

the jury, find the defendant guilty of manslaughter.' "
The verdict of the jury was, "We, the jury, find the defendant guilty of manslaughter," and the court sentenced the defendant to imprisonment in the state penitentiary for a term of five years; hence this appeal.

If a long line of decisions of this court is to be followed, this case should be reversed. We proceed now to analyze the verdict. The essential and potent fact is that the jury believed, and so said by their verdict, that the defendant was guilty of an unlawful and felonious homicide. To reach this conclusion, the jury necessarily and entirely rejected the evidence given on behalf of defendant. This is true, because, if they had any reasonable doubt about the truthfulness of any, or all, of this evidence, it was the duty of the jury to say not guilty. But the jury, by its verdict, said guilty, and ignorantly named the crime manslaughter. First, defendant was found guilty; second, the jury said he was guilty of manslaughter. If guilty, he should be punished for murder. That he was guilty was the solemn finding of the jury; but the jury went further, and said that he was guilty of the lesser crime, and it is of this that appellant complains.

It seems to us that this complaint overlooks, or ignores, the fact that the jury rejected all of defendant's testimony, and pronounced him guilty, and that the jury could not have reached this verdict, unless they did reject the defendant's theory, and unless they did adopt and believe the state's theory of the facts. It is a fact that the jury, for some reason satisfactory to them, thought defendant was not guilty of the higher crime, which error of the jury resulted in a five-year sentence instead of a life sentence. So it seems, in the last analysis, the complaint is that the verdict, to satisfy the law, should have been for murder, and that defendant, by the verdict rendered, was deprived of his legal right to spend the balance of his days in the penitentiary.

Technically the contention of defendant may be flawless; but practically we think it is without substance or merit.

Logically the defendant is not complaining of any injury to himself, but insists that the law has been perverted in his interest, and to this he cannot give his consent. Upon an indictment charging murder, the person charged may be legally convicted of manslaughter, provided there is evidence justifying the belief that the defendant is guilty of the lesser crime. This is admitted; but it is contended that there was, no evidence even tending to prove manslaughter. The reply is that there was abundant evidence to prove murder—and the defense was based upon evidence showing that defendant had no part in the killing—and we are unable to see how he can complain of the instruction on manslaughter, or of the verdict of the jury. If the jury reached the conclusion that defendant was the killer, he had no defense, and according to the state he was guilty of murder. If the jury believed that defendant fired the fatal shot, and they did so believe, they must necessarily have believed that his story was false. This is accurately and precisely what the verdict of the jury means.

So the sum total of appellant's complaint is that the court erred in authorizing the jury to find him guilty of manslaughter, and the jury erred in accepting this instruction, because, if they believed he was the killer—and by their verdict they did so believe—then it was their duty under the law to have pronounced him guilty as charged; and, failing in this duty, he (appellant) was denied his legal right to a conviction for murder. It may be urged that this line of reasoning assumes that the defendant is guilty of murder, and so it does—and rightly—for this is just what the verdict of the jury means.

This decision is in conflict with *Parker* v. *State*, 58 South. 978, the last pronouncement of this court, and many other cases, all of which are overruled. In *Rolls* v. *State*, 52 Miss. 391, in response to the same argument that is made in this case, that the verdict of the jury was wrong on either theory of the case, the court said:

"There might be something in the point if a reversal [of the case] for that reason would put the defendant on a second trial to answer for the crime of murder. But, if really guilty of murder, it is not quite clear that the plaintiff in error has been prejudiced by the failure of the jury to find him guilty of that crime." The learned judge rendering that opinion seems to have used the same line of thought used by the court in this opinion. However, in that case no instruction was given authorizing the jury to find the defendant guilty of manslaughter.

In *Moore* v. *State,* 86 Miss. 160, 38 So. 504, the defendant was being tried upon an indictment charging him with murder. The court, at the request of the state, gave the following instruction to the jury, viz.: "The court charges the jury, for the state, that manslaughter is the killing of another in the heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense; and the court further instructs the jury, for the state, that if the jury believe from the evidence beyond a reasonable doubt that Ellis Poole cursed Daniel Moore for a son of a bitch, and that Moore, while still under the heat of passion, aroused by such insult, secured a pistol and shot and killed Poole, not in malice, but in the heat of passion, and not in his necessary self-defense, then he is guilty of manslaughter, and the jury should so find." One of the complaints to this instruction was that, if appellant shot Poole under the circumstances stated in the instruction, he was guilty of murder; and another objection was that the instruction was upon the weight of the evidence, and assumed that defendant was under the heat of passion when he killed the deceased.

In response to the contention of counsel for appellant in that case, the court said: "It is not necessary that we should say which of these conflicting views is correct. In either view, appellant was not prejudiced in his defense by the instruction. Self-defense was the sole de-

fense relied upon by appellant. This defense was presented to the jury by numerous instructions, which most liberally, exhaustively, and persuasively expounded the law applicable to that subject. A jury could not by any possibility have acted in ignorance as to appellant's right to slay his antagonist, if apparently necessary so to do, in order to save himself from impending danger to life or limb, actual or apparent. Their verdict of manslaughter can mean nothing less than that they were satisfied beyond a reasonable doubt that appellant did not act in justifiable self-defense. We cannot say that this finding of fact is not correct, and it shuts us up to the conclusion that appellant was guilty of either murder or manslaughter. A conviction of the lesser of these two crimes will not be set aside, because had upon an instruction which, if incorrect at all, is incorrect only in this: That it directed a verdict of manslaughter under facts which would have warranted a conviction of murder."

These two decisions of this court are at least in line with our view of the law as announced in this case, and for other authorities in support of our views we cite the following: *State* v. *Hagan,* 131 N. C. 802, 42 S. E. 901; *Powell* v. *State,* 5 Tex. App. 234; *State* v. *Underwood,* 35 Wash. 568, 77 Pac. 863.

There are many assignments of error, other than the one just considered; but, after a careful examination, we are of opinion that there is no merit in any of them, and for that reason the case is affirmed.

*Affirmed*