(No. 2447.   Dec. 23, 1921.)

## STATE v. PRUETT.

### SYLLABUS BY THE COURT

(1)   Involuntary manslaughter, as defined by section 1460, Code 1915, is confined to cases where the killing is unintentional.                                      P. 577

(2)   It is reversible error to submit the issue of involuntary

State v. Pruett, 27 N. M. 576

manslaughter where all of the evidence and all of the inferences therefrom show that the killing was intentional.
P. 579

Appeal from District Court, Union County; Leib, Judge.

James C. Pruett was convicted of involuntary manslaughter, and he appeals. Reversed and remanded, with directions.

Theodore Pruett, of Anadarko, Okl., and O. P. Easterwood, of Clayton, for appellant.

O. O. Askren, Atty. Gen. for the State.

Percy Wilson and W. B. Walton, both of Silver City, and Clifton Mathews, of Globe, Ariz., amici curiae.

OPINION OF THE COURT

PARKER, J. This case has been twice before this court on appeal. See 22 N. M. 223, 160 Pac. 362, L. R. A. 1918A, 656; 24 N. M. 68, 172 Pac. 1044. The conviction each time was for voluntary manslaughter. Appellant was put on trial a third time, was convicted of involuntary manslaughter and sentenced, and has brought this appeal.

[1] The first question to be considered is whether there is any evidence authorizing a conviction of involuntary manslaughter. The evidence for the state is entirely circumstantial, the appellant being the only eye witness testifying to the immediate circumstances. The theory of the prosecution was that appellant waylaid deceased and shot him from ambush, while appellant claimed he was out hunting rabbits with a rifle and accidentally met the deceased in a public road. He says the deceased approached him on horseback and threatened to kill him then and there, and made an effort to draw his rifle from a scabbard on the saddle; that appellant then fired his rifle, but missed deceased; that the

shot frightened the horse, causing him to turn; that deceased straightened up the horse, had gotten the gun out of the scabbard and up to his shoulder in firing position, and was in the act of firing when appellant fired the fatal shot; that deceased then fell from the horse; that appellant fired in self-defense. There is nothing in the whole case to indicate, and no fact is shown from which the inference could be drawn, that the killing was done negligently·or accidentally, or otherwise than intentionally. Attorney General Askren, who filed the brief for the state, so agrees.

Our statute is as follows:

"Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: 1st. Voluntary: Upon a sudden quarrel or in the heat of passion. 2nd. Involuntary: In the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection." Section 1460, Code 1915.

The act of killing the deceased by intentionally shooting him with a rifle could not be said to be a killing "in the commission of an unlawful act not amounting to a felony," under the first clause of the statute, as, if.the act was not justified by the law of self-defense, it would constitute at least an assault with a deadly weapon and would be felony under section 1704, Code 1915. Under the same conditions the same act would not fall within the terms of the second clause of the statute, because the act of appellant, unless justified by the circumstances, would not be lawful. The words "in an unlawful manner, or without due caution and circumspection" necessarily refer, not to the quality of the act itself, but to the manner of doing it. The meaning of the words in the last clause of the statute, therefore, necessarily excludes all cases of intentional killing, and include only unintentional killings by acts unlawful, but not felonious, or law-

ful, but done in an unlawful manner, or without due caution and circumspection. In other words, the killing must be unintentional to constitute involuntary manslaughter, and, if it is intentional and not justifiable, it belongs in some one of the classes of unlawful homicide of a higher degree than involuntary manslaughter. We do not deem it necessary to cite authority in detail from other jurisdictions on similar statutes, but it will be sufficient to say that it seems to be uniformly held that an intentional killing is never deemed to constitute involuntary manslaughter. See 1 Michie on Hom. § 34, where many cases are collected and commented upon. See, also, 13 R. C. L. "Homicide," §§ 88 and 89.

[2] The only theory upon which this conviction can be sustained is that a defendant cannot complain of the submission of a false issue to the jury when the result is to convict him of a lesser offense than the one of which he is shown by the evidence to be guilty, for the reason that it is error in his favor. The absurdity of such a theory is at once apparent upon examination. A controlling consideration must be overlooked in order to sustain such a theory, and that is that a conviction of a lesser degree of homicide is an acquittal of all higher degrees. When, therefore, a verdict comes in convicting of involuntary manslaughter, the defendant stands acquitted of all higher degrees of the crime. He is not, and cannot be, any longer guilty, in a legal sense, of any of the higher degrees of the crime. The district court and this court in order to sustain the conviction in such a case must shut eyes to this consideration, and must say that, although the defendant is not legally guilty of the higher crime, he is so guilty in fact, and is not therefore in position to complain when he receives less punishment than he deserves. Such a proposition is so illogical and so contrary to the fundamental principles of jurisprudence as to have met

with only slight favor or recognition by the courts, and the overwhelming weight of authority is against it. A few states only seem to be committed to the doctrine. Thus, in Bennett v. State, 95 Ark. 100, 128 S. W. 851, the court said:

"We would not have disturbed a verdict, under the evidence, for murder in the first degree. There is evidence tending to show that appellant was guilty of murder in the first degree. There is no evidence tending to prove that appellant was guilty of voluntary manslaughter. His crime was murder in the first degree, if anything. By finding the appellant guilty, the jury accepted the testimony tending to prove guilt, and rejected the testimony of appellant tending to prove his innocence. Since there was testimony tending to show that appellant was guilty of murder in the first degree, he cannot complain because the jury, believing him guilty of some offense, found for a lower degree than that of which he was guilty, if guilty at all. Appellant was not prejudiced by the verdict as to the degree of homicide of which the jury found him guilty, since they might have found him guilty under the evidence of the highest crime in the indictment."

In Brown v. State, 31 Fla. 207, 12 South, 640, it was urged that there was error in submitting manslaughter to the jury under an indictment for murder. The court simply said in disposing of the contention:

"An accused cannot be heard to complain of error of this character, that is in his favor."

In State v. Quick, 150 N. C. 820, 64 S. E. 168, the defendant was indicted for murder and convicted of manslaughter. The court said:

"Suppose the court erroneously submitted to the jury a view of the case, not supported by evidence, whereby the jury were permitted, if they saw fit, to convict of manslaughter instead of murder. What right has the defendant to complain? It is an error prejudicial to the state, and not to him. His plea of self-defense had been fully and fairly presented to the jury and rejected by them as untrue. What, then, was the duty of the jury, if there was no evidence of manslaughter? Clearly, under the law, they should have convicted the defendant of murder in the second degree. How, then, can the defendant, his plea of self-defense having been wholly discarded by the jury, and the burden being upon him to reduce the offense to something less than

murder in the second degree, reasonably complain of the charge, however erroneous in that respect, which permitted the jury to convict of a lesser degree of homicide?"

There is a vigorous dissent filed in this case by Walker, J., in which he points out the reasons why such a doctrine cannot be maintained, although he does concur in the result in the case on the ground that there was evidence of manslaughter.

In State v. Perry, 78 S. C. 184, 59 S. E. 851, a defendant was charged with murder and was convicted of manslaughter. The court said:

"There was testimony tending to show that the defendant was guilty of murder. Therefore, he has no just cause to complain that the jury took a merciful view of his case, and simply found him guilty of manslaughter."

In the state of Texas the decision upon this proposition seems to be somewhat in doubt. Thus, in Boren v. State, 32 Tex. Cr. R. 637, 25 S. W. 775, the defendant was convicted of murder. He complained because the court had instructed on murder in the second degree, contending that there was no evidence presenting this degree. The court said:

"We agree with counsel, that this homicide was murder of the first degree, or no offense whatever. If appellant was not insane, this was a cold-blooded murder. If he was, the homicide was excusable. The issue was * * * sanity or insanity. On such a state of the case a charge upon murder of the second degree was * * * clearly beneficial to appellant."

It was accordingly held that the error of the court in submitting the issue of murder in the second degree did not call for a reversal of the judgment.

In Chapman v. State (Tex. Cr.) 53 S. W. 103, the court instructed on the two degrees of murder and manslaughter and the instructions were sustained. The court said:

"We are not aware of any case in which this court has held that the judgment should be reversed because the court

gave the defendant the benefit of a charge on a less offense than that shown by the evidence."

In Robinson v. State (Tex. Cr.) 57 S. W. 811, the appellant was convicted of manslaughter. He complained that the evidence did not raise that issue. The court said:

"Concede that the evidence does not raise the issue of manslaughter, yet the charge is favorable to the rights of appellant, and he cannot be heard to complain of the same."

Serna v. State (Tex. Cr.) 105 S. W. 795, is to the same effect.

On the other hand, in Flynn v. State, 43 Tex. Cr. R. 407, 66 S. W. 551, where the defendant was convicted of negligent homicide in the second degree in a case where the evidence showed an intention to kill, the court said:

"We accordingly hold that the court erred in submitting the issue of negligent homicide at all, even if it be conceded that the same was properly submitted in the charge, which is not the case here."

In this connection we desire to express our great respect for the ability and learning of the courts of the five states mentioned above, but we must admit that we find in their decisions no legal principle asserted upon which, in our judgment, the doctrine which they uphold can be sustained. On the other hand, as before stated, the great weight of authority is against the proposition, and we need go no further than our own cases to demonstrate the same.

In Territory v. Fewel, 5 N. M. 34, 17 Pac. 569, the defendant was convicted of murder in the third degree (under the statute as it then stood, which punished killing without design to effect death, in the heat of passion, but in a cruel and unusual manner). The court examined the evidence and found that the defendant was convicted of the very degree,

to sustain which there was not a particle of evidence.    The court said:

"The Attorney General contends that even if this instruction be held erroneous it was an error committed in defendant's favor, and he cannot complain.    This may or may not be true.    If it could be said from a consideration of the whole case, and in any view of it, that the defendant would have been convicted of a higher degree if this instruction had not been given, then the position might be sound.    But if, from a fair and impartial examination of the evidence, the jury might have returned a verdict of not guilty, had their attention been confined by the instructions to an intentional killing constituting crime, or an intentional killing justified by law, then the defendant was prejudiced by the failure of the court to confine the attention of the jury to this issue.    From a careful consideration of this evidence, in view of the rule that the jury is the sole judge of its weight, and the credibility of the witnesses from whom it is elicited, it can not be said that the jury was bound to find defendant guilty of an intentional killing without lawful excuse.    This being true, an instruction which leads them away from the real issue is erroneous."

In Territory v. Hendricks, 13 N. M. 300, 84 Pac. 523, the defendant was charged with murder in the first degree, and the evidence showed that, if guilty at all, he was either guilty of murder in the first degree or murder in the second degree.    The trial court nevertheless instructed the jury on murder in the third degree, and the defendant was convicted in that degree.    The court held that there was no element of third degree murder in the case, and that the giving of the instruction on third degree murder was reversible error, and said:

"From what we have said above, if there is no evidence to show murder in the third degree, it follows, that it is error to charge in that degree, and to sentence on a verdict of guilty returned by a jury in that degree, * * * because of the well-settled rule, that no judgment will be sustained on appeal, unless there is evidence to support it.    It is needless to quote authorities in support of this proposition.

"In the case at bar the evidence all goes to show that the killing was either murder in a higher degree than the third, or that it was justifiable homicide, and as there was no evi-

dence to sustain the verdict returned by the jury of guilty in the third degree, the case is reversed.   *   *   *."

The converse of this proposition, viz. that it is not error to refuse to submit the issue of manslaughter in a case where the evidence does not warrant it, is held in State v. Smith, 24 N. M. 405, 410, 174 Pac. 740, and in numerous prior cases.

The only discordant note found in our reports upon this subject is contained in the special concurring opinion in State v. Kidd, 24 N. M. 572, 175 Pac. 772, in which it is stated that in the opinion of the writer a defendant in a prosecution for homicide cannot complain that he was convicted of a lower grade of the offense than the evidence showed him to be guilty of. The opinion, however, not being that of the court, has not committed the court to the doctrine therein stated. Some of the cases there cited in support of the doctrine have already been considered, and others will be considered hereafter.

In some of the Courts of Appeals in California, the erroneous doctrine has been sanctioned that a defendant cannot complain of the submission of a false issue as to the degree of crime in homicide cases. See People v. Tugwell, 32 Cal. App. 520, 163 Pac. 508. Others of these courts have held to the contrary. People v. Kelley, 24 Cal. App. 54, 140 Pac. 302.

In People v. Huntington, 138 Cal. 261, 70 Pac. 284, the defendant was charged with murder, and the evidence showed that, if guilty at all, he was guilty of murder. The trial court nevertheless instructed the jury on manslaughter, and the defendant was convicted of manslaughter. The Supreme Court of California held that there was no element of manslaughter in the case, and that the giving of

a manslaughter instruction was reversible error. The court said:

"Under the circumstances of the case at bar there should have been no instruction on the subject of manslaughter; the only question legitimately before the jury was whether appellant had caused death while attempting to produce abortion. If that was the fact, he was guilty of a murder; and there was no element of manslaughter present. But the jury, under the instruction, found him guilty of manslaughter, and he was therefore tried for one crime and convicted of an entirely different crime."

In the case of People v. Kelly, 24 Cal. App. 54, 140 Pac. 302, the defendant was charged with murder and found guilty of manslaughter. The California statute on manslaughter is identical with ours. The facts in this case presented the identical question that is presented by the facts in the case at bar. The defendant intentionally fired at the deceased under the belief that the latter was approaching him for the purpose, and with the intention, of inflicting upon him bodily harm. He made no claim that the killing was even the result of a sudden quarrel, or in the heat of passion, or that it was the result of an unlawful act not amounting to a felony, or the consequences of misadventure. Nor did the prosecution make any such claim. The court said:

"That the action of the court in giving to the jury the above quoted instruction upon that subject and in submitting to them a form of verdict conforming thereto was, under the circumstances of this case, prejudicial, we think is plainly manifest."

The court goes on to point out that involuntary manslaughter under such a statute is an entirely distinct crime from that of murder or voluntary manslaughter. It states that the three crimes possess but one element in common, and that this is the fact of the killing. The court said:

"In murder, there is, essentially, the element of malice or premeditation and the preconceived intention to kill. In voluntary manslaughter, while the element of malice or pre-

meditation in the taking of life is wanting, the intention to do so is present, as the term, 'voluntary,' necessarily implies. Involuntary manslaughter, as the phrase necessarily imports . and as our Code defines that crime, is the taking of life in certain unlawful ways without any intention of doing so."

The court intimates, if indeed it does not assert, however, that a different question would arise in case voluntary manslaughter had been submitted to the jury and the defendant had been convicted thereof. People v. Barnhart, 59 Cal. 381; People v. Maroney, 109 Cal. 277, 41 Pac. 1097; People v. Lowen, 109 Cal. 381, 42 Pac. 32; People v. Muhlner, 115 Cal. 303, 47 Pac. 128—are cited as authority for the proposition that a defendant convicted of voluntary manslaughter might not be in a position to complain because the verdict is more favorable to him than is perhaps justified by the evidence. If this case of People v. Kelley, represents the state of opinion in California, it would seem that in that state a defendant might be convicted of voluntary manslaughter, and he could not complain on appeal that the evidence did not warrant such conviction. The doctrine seems to be founded upon a statute in ' that state (section 1157 of the Penal Code) to the effect that, whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of which he is guilty. Whether this is the proper effect to be given to such a statute it is not necessary in this case to determine. See, also, People v. Hamilton (Cal. App.) 192 Pac. 467.

In Dickens v. People, 67 Colo. 409, 186 Pac. 277, the defendant was charged with the murder of his father under the following circumstances, as stated by the court:

"The evidence, without cavil or dispute, shows that the killing was accomplished by lying in wait, that it was done maliciously, premeditatedly, and deliberately, in cold blood, an assassination pure and simple. There was not a scintilla of evidence to show that the killing was done in any other manner than as above stated. The defendant entered a plea

of not guilty, and the issue was whether Rienzi was guilty of murder of the first degree, or not guilty, and under the proofs that was the only possible issue."

The court instructed the jury, over the objection of the defendant, that it might return a verdict of either first degree murder or second degree murder. The court, after reviewing the Colorado cases, said:

"In view of the conclusive character of the evidence in this case as to the degree of the offense committed, the charge of the court permitting the jury to find second degree murder could not have failed to mislead and confuse them, and by all of the authorities was, under such circumstances, prejudicial and reversible error."

There is a strong dissenting opinion by three of the justices of the Supreme Court of Colorado.

In Jordan v. State, 117 Ga. 405, 43 S. E. 747, the defendant was charged with murder and convicted of involuntary manslaughter. The court said:

"The jury might with propriety have convicted the accused of murder or of voluntary manslaughter; on the other hand, there was evidence to justify an acquittal. The only verdict possible which was wholly unauthorized by the evidence was the verdict returned. * * * While mistrials are generally misfortunes, and often result in a miscarriage of justice; and while courts should do everything possible, within the limitations of their power, to aid juries in reaching a verdict, no instruction should be given to the jury for the purpose of enabling them to reach a verdict which does not speak the truth under any view possible to be taken of the evidence."

The case was reversed on this and other grounds.

In Coleman v. State, 121 Ga. 594, 49 S. E. 716, the defendant was charged with murder and convicted of manslaughter. The evidence showed that if guilty at all he was guilty of murder. The court said:

"We recognize the dilemma which frequently confronts the trial judge in this class of cases. If he improperly omits to charge on the subject of manslaughter, a new trial must be granted. Conversely, if he improperly includes that charge, a new trial will be granted. But such is the law. Consider-

ing the gravity of the issue, the error is one which has been repeatedly held to entitle the defendant to another hearing."

Georgia seems to have considered this question more often than any of the other states, but we do not deem it necessary to cite any more of the Georgia cases.

In People v. Schultz, 267 Ill. 147, 107 N. E. 833, the defendant was indicted for murder and the evidence showed that, if guilty at all, he was guilty of murder. The trial court nevertheless instructed the jury on manslaughter, and the defendant was convicted of manslaughter. The court held that there was no element of manslaughter in the case, and that the giving of the manslaughter instruction was reversible error. The court said:

"If the evidence justified the conclusion that plaintiff in error committed the homicide, it must be conceded that there was no proof of any circumstances to reduce the crime from murder to manslaughter. The instructions given on the subject of manslaughter stated correct propositions of law, and the objection to them is that there was no evidence upon which to base them. It is fundamental that upon the trial of an issue of fact it is erroneous to give such instructions not based upon any evidence. Only such instructions should be given as are based upon legitimate evidence. * * * It is the law that under an indictment for murder the defendant may be convicted of manslaughter, but this does not mean that a jury is authorized or warranted in finding a defendant guilty of manslaughter where there is no evidence tending to prove the commission of that crime, but where it is conclusively proven that if any crime was committed it was willful and deliberate murder."

The court makes an elaborate review of the Illinois cases down to the time the opinion was promulgated, and shows that this is the estabished doctrine in that state.

In State v. Bertoch (Iowa) 79 N. W. 378, the defendant was indicted for murder in the first degree by means of poison. The trial court nevertheless instructed the jury on murder in the second

State v. Pruett, 27 N. M. 576

degree, and the defendant was convicted of murder in the second degree. The Supreme Court of Iowa held that there was no element of second degree murder in the case, and that the giving of the instruction on second degree murder was reversible error. The court said:

"We now inquire whether the defendant was prejudiced by the instructions complained of. The punishment prescribed for murder in the first degree is 'death or imprisonment for life at hard labor in the penitentiary, as determined by the jury.' For the second degree it is 'imprisonment in the penitentiary for life, or for a term of not less than ten years.' So far as the penalty is concerned, the instructions were more favorable to the defendant than he had a right to ask. By the verdict he escaped liability to the death penalty, and gained the possibility of being sentenced for a term of years only; but it is not in the penalty imposed that the defendant is prejudiced. It was the duty of the jury, if they entertained a reasonable, well-founded doubt of the defendant's guilt of murder in the first degree, to have acquitted him; for, as we have seen, he could not be guilty in any less degree. The jury must have entertained a reasonable, well-founded doubt as to the defendant's guilt as charged—that is, guilt in the first degree; otherwise, it would not have acquitted him of that degree, and convicted him of the second. Now, as we have seen, if the jury had such a doubt as to his guilt in the first degree, the defendant was entitled to have that doubt resolved in his favor, and to be acquitted. By the unauthorized latitude given in the instructions, the defendant was deprived of the benefit of this doubt."

But see to the contrary State v. Quan Sue (Iowa) 179 N. W. 972.

In Parker v. State, 102 Miss. 113, 58 South. 978, the defendant was charged with murder and convicted of manslaughter. The court said:

"There is no halfway ground here; no debatable question, except the defendant's guilt or innocence of the crime of murder. To advise the jury that they could compose their differences and doubts, if any they had, by finding the defendant guilty of a lesser crime, without evidence to support the verdict, is unfair to defendant and manifest error."

To the same effect is Rester v. State, 110 Miss. 689, 70 South. 881, where the defendant was in-

dicted for murder and convicted of manslaughter. The court said:

"The state's evidence, if believed, convicts the defendant of the crime of murder, if anything. The defendant's testimony, if believed, establishes a clear and unquestioned case of self-defense. As said by our court in similar cases, there is no middle ground. This is not a case where the jury, by believing certain portions of the state's evidence, and certain portions of the defendant's evidence, can thereby weave out or make a case of manslaughter. This is a typical case where the defendant is guilty of unprovoked murder or he is innocent. * * *

"The verdict of the jury rendered in pursuance of this instruction and convicting the defendant of the crime of manslaughter is not supported by the evidence in the case and constitutes error."

The court in commenting upon a previous case, Huston v. State, 105 Miss. 413, 62 South. 421, which held that the submission of manslaughter was harmless because favorable to the defendant, said:

"The majority of the court as now constituted believe the Huston Case was and is wrong and should be overruled, and this court should turn to the holding of and re-adopt the decisions expressly overruled by the court in the Huston Case. We have given this subject careful consideration, and hereby overrule the Huston Case, and return to the safer and sounder principle well announced by Judge Cook in Parker v. State, supra."

In State v. Punshon, 124 Mo. 448, 27 S. W. 1111, the defendant was charged with murder and convicted of manslaughter. The court said:

"That there was no evidence whatever upon which to predicate such an instruction, is admitted by the Attorney General in his printed brief, but he argues that, of this, defendant cannot complain, because, we presume, of his conviction of a less offense than that for which he was indicted and put upon his trial. We do not understand this to be the law. While, by statute, it is made the duty of the court to instruct on every phase of the case warranted by the evidence, it is not its duty to instruct upon any grade of offense not authorized by the evidence, and it is error to do so."

In Dresback v. State, 38 Ohio St. 365, the defend-

ant was charged with murder by poison, and was convicted of murder in the second degree. The court had instructed the jury that they might return a verdict either in the first or second degrees of murder, or for manslaughter. The judgment of the court was reversed for this error.

In Lesency v. State, 13 Okl. Cr. 247, 163 Pac. 956, the defendant was indicted for murder by poison and convicted of manslaughter in the first degree. The district court had instructed on manslaughter in the first degree. The court said:

"The giving of this instruction is assigned as error; and, as above indicated, we think, the assignment is well taken; for either the state or the plaintiff in error, one or the other, by this verdict has been cheated. If the plaintiff in error is guilty, no other punishment is prescribed by law for her crime than death or imprisonment for life. If, on the other hand, she is not guilty, or if the jury entertained a reasonable and well-founded doubt of her having committed the atrocious crime of which she was charged, then she was entitled to an acquittal at their hands. Under this record there is no middle ground, and it was the duty of the jury to bring in a verdict either of murder or an acquittal. But by the unauthorized latitude given them in this instruction they might, and they did, do neither."

In Swan v. State, 13 Okl. Cr. 546, 165 Pac. 627, it was held that there was no evidence which directly or indirectly raised the issue of negligent homicide or manslaughter in the second degree, and instructions submitting the question of guilt or innocence of that crime should not be included in the charge to the jury.

In State v. Ash, 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611, the defendant was charged with murder and was convicted of manslaughter. The Supreme Court held that there was no element of manslaughter in the case, and that the giving of the manslaughter instruction was reversible error, saying:

"The state contends that, since the greater includes the

·less, manslaughter is included in murder in the first or second degree. Unquestionably this is true in law, but to be included in law is not sufficient; it must also be included in fact. We have so held in a number of cases."

The court then cites and quotes from two former Washington cases (State v. Kruger, 60 Wash. 542, 111 Pac. 769; State v. Pepoon, 62 Wash. 635, 114 Pac. 449), and goes on:

"Answering the rule of these cases, the state contends that, inasmuch as it is admitted that manslaughter is included in law in a charge of murder in the first degree, and as under our practice jurors are sole judges of the facts, the court cannot say, as a matter of law, there is no testimony to establish any of the lesser or included crimes, but must admit the legal inclusion and submit the inclusion in fact to the jury. This would be required where there was any fact or facts to be determined by the jury. But the court is not required to submit any determination of a fact to a jury when there is no fact, nor to permit a jury to establish by its verdict a fact which there is no evidence to sustain. * * * We are therefore of the opinion that it was error for the court to submit an instruction involving the crime of manslaughter."

In Pliemling v. State, 46 Wis. 516, 1 N. W. 278, the defendant was charged with murder in the first degree, and he was convicted of murder in the third degree. The court held that there was no evidence of murder in the third degree in the case and that the giving of the instruction on that degree was reversible error. The court said:

"Looseness and latitudinarianism in the construction of criminal law, and in judicial trials of grave offenses, and ·compromises of ·legal principles and of honest judgment, in order to effect some agreement or to render some verdict in the trial of high crimes or of offenses of any grade, induced by whatever influence, must not be tolerated by the courts; and the responsibility in such cases must rest upon the tribunal in which it is practiced or attempted. So far as possible, there should be absolute certainty in the administration of criminal law; and its essential principles will not be perverted or compromised by this court in any case, in consideration of future proceedings or ultimate results."

We have made this somewhat extensive review of · the authorities on account of the importance of the

State v. Pruett, 27 N. M. 576

question, and also on account of the constant recurrence of the question before the court. It is of great importance to the district courts, who are constantly called upon to administer the doctrine under discussion. In the case at bar the result seems to be clear and irresistible. There was no evidence in the case under any possible construction, and no inference properly to be drawn, wherefrom the killing could have been found to have been involuntary. It was clearly error, therefore, for the court to submit such a false issue to the jury. It is to be observed in this connection, however, that the proposition is not quite so clear when the question is as to the submissibility of the issue of voluntary manslaughter in a murder case. The principle, however, must be the same in all cases.

The defendant has been acquitted by the verdicts in the two former trials of murder in the first and second degrees, and has been acquitted by the verdict in this case of voluntary manslaughter. Therefore he is now entitled to be discharged, as he cannot, under the facts, be convicted of involuntary manslaughter.

It follows from all of the foregoing that the judgment should be reversed and the cause remanded, with directions to set aside the judgment, dismiss the case, and discharge the defendant; and it is so ordered.

RAYNOLDS, C. J., concurs.

DAVIS, J., did not participate.