558 P.2d 39

**Antonio Chuck SMITH, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 11007.**

Supreme Court of New Mexico.

Dec. 27, 1976.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Don Klein, Assistant Appellate Defender, Santa Fe, for petitioner.

Toney Anaya, Atty. Gen., Ralph W. Muxlow II, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

MONTOYA, Justice.

This cause is before us on a writ of certiorari directed to the New Mexico Court of Appeals in *State v. Smith* (filed May 18, 1976), 90 N.M. ——, 558 P.2d 46 (Ct. App.1976), which affirmed a conviction of defendant for the crime of voluntary manslaughter.

The pertinent facts, as set forth in the opinion of the Court of Appeals in *State v. Smith,* supra, are as follows:

"Defendant, Weaver and Starke picked up the female victim in Hobbs, New Mexico. They went to a home in Eunice, New Mexico and obtained a bedspread. They then drove to an oil well meter site. Weaver attempted to have sexual intercourse with the victim but was unable to do so. Defendant then had sexual intercourse with the victim. Starke then engaged in an act of sodomy with the victim. The sodomy 'kind of made . . . [Weaver] sick' so he hit the victim on the face and then returned to the car. While at the car Weaver heard a thud. Starke had a piece of pipe or fence, and the victim was lying on the ground, not moving. Starke admitted that he hit the victim. Either Starke or defendant or both removed a chain from the car. The chain was wrapped around the upper part of the victim's body; Starke and the defendant played tug of war with the chain. The chain was subsequently removed and the victim was 'folded up in the trunk' of the car. Blood, hair and the victim's clothes were subsequently found at the meter site.

"Starke drove the car to an oil well slush pit tank. The three men removed the victim from the trunk of the car and threw the victim into the tank. The victim was still alive. Both Weaver and

Starke got into the tank, which contained approximately 14 inches of an 'oil substance'. Weaver stood and Starke sat on the victim. Subsequently defendant, who was on the ladder of the tank, helped Starke climb out of the tank. There is medical evidence that the victim was dying of her injuries before being placed in the tank and, also, that death resulted from drowning in oil.

"Both Weaver and Starke pled guilty to second degree murder. In defendant's trial the jury was instructed on first and second degree murder and voluntary manslaughter. The evidence would have sustained a conviction of either degree of murder but the jury acquitted defendant of murder charges. The conviction was for voluntary manslaughter."

The defendant had appealed his conviction to the Court of Appeals claiming that the evidence was insufficient to sustain a conviction of manslaughter; that there was no evidence of provocation, or of the absence of malice. He also claimed error in the court's instruction, being N.M.U.J.I. Crim. 2.20.

The Court of Appeals, in its opinion, upheld the challenged jury instruction and specifically held that provocation is not an element of voluntary manslaughter. It also relied on ch. 199, § 1, [1937] N.M. Laws 522, which permits the conviction of a lesser degree, even though the evidence shows the accused to be guilty of a higher degree of homicide.

The issues presented for review are as follows:

(1) Whether a conviction for voluntary manslaughter may validly be sustained when the defendant was acquitted of second degree murder and the record does not contain any evidence that the defendant acted upon a sudden quarrel or in the heat of passion, or upon such provocation that would reduce the degree of homicide from murder to manslaughter. Resolution of this major issue depends in part upon resolution of the subordinate questions of:

(a) whether ch. 199, § 1 [1937] N.M. Laws 522, may constitutionally be applied to uphold a conviction for one degree of an offense when the evidence shows guilt of a higher degree, and

(b) whether N.M.U.J.I.Crim. 2.20, to the extent that it allows conviction of manslaughter if the jury has a "reasonable doubt as to whether" the defendant acted as a result of sufficient provocation rather than requiring proof beyond a reasonable doubt, violates due process of law.

We first consider whether it was proper to submit the issue of voluntary manslaughter to the jury when there is no evidence of a sudden quarrel or heat of passion, as is required by the statutory definition of that offense.

Section 40A–2–3, N.M.S.A.1953 (2d Repl.Vol. 6, 1972), reads in pertinent part:

"Manslaughter is the unlawful killing of a human being without malice.

"A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion."

It follows logically and obviously from the definition that, in order to convict of voluntary manslaughter, the jury must have evidence that there was a sudden quarrel or heat of passion at the time of the commission of the crime (in order, under the common law theory, to show that the killing was the result of provocation sufficient to negate the presumption of malice; see, e. g., R. Anderson, Wharton's Criminal Law and Procedure § 242 at 522 (1957)).

The transcript of record is barren of any such evidence of provocation. Neither party contends that there was any sudden quarrel or heat of passion of any kind involved in the circumstances surrounding the killing in this case. In fact, the Court of Appeals admitted that "[t]he evidence in this case is that defendant's participa-

tion in the killing was in the absence of provocation and, thus, with malice. The evidence proves murder, not voluntary manslaughter."

The case of *State v. Trujillo,* 27 N.M. 594, 203 P. 846 (1921), is dispositive of this point. In that case, the New Mexico Supreme Court reversed a conviction of voluntary manslaughter under circumstances markedly similar to those presently before the court, stating (27 N.M. at 601, 603, 203 P. at 849):

> "We have, then, a case where a man has been convicted of voluntary manslaughter, and where there is no evidence showing, or from which an inference can be drawn, that there was a sudden quarrel, or that there was heat of passion. To say that either one was present would be to put into the case facts which are not there, and which the jury would have no right to do. * * *

> "* * *.

> "The defendant by the verdict has been acquitted of murder, and has been convicted of a crime of which he is not shown to be guilty, and he is consequently entitled to be discharged."

The Court of Appeals did not follow *State v. Trujillo,* supra, and sought to distinguish it by stating (89 N.M. 779 at ——, 558 P.2d at 48):

> "The presence of sufficient provocation is the usual method of determining that the offense is voluntary manslaughter. However, this usual method does not cover the situation where the evidence is insufficient to show the malice required for murder and the evidence also is insufficient to show provocation. Under defendant's theory, if there is no affirmative proof of provocation, defendant may have committed no crime at all even though the evidence shows an unlawful killing.

> "The answer to defendant's contention is provided by *State v. Burrus,* 38 N.M. 462, 35 P.2d 285 (1934). * * *"

The passage from the denial of Burrus' motion for a rehearing upon which the Court of Appeals relies is as follows (38 N.M. at 470, 35 P.2d at 290):

> "The real question is whether manslaughter is an offense the commission of which is 'necessarily included' in the murder with which appellant was charged, within the meaning of the proviso. It is readily to be perceived that the two offenses are distinct in the sense that manslaughter was not committed in committing the higher offense of murder. If murder was committed, there was no manslaughter. But that is not the point. The lesser need not be committed in the perpetration of the greater. The commission of the lesser need only be 'necessarily included' in the offense charged. The charge that there was an unlawful killing from malice aforethought, which constitutes murder, embraces the several elements, the killing, the unlawfulness of it, and the malice of it. On each element the accused is put to trial. As to any of them the proof may fail. If there was no killing or if it was not unlawful, there is no guilt. If there was a killing and it was unlawful but without malice, there is guilt of manslaughter. In that sense, murder as defined in law necessarily includes manslaughter as defined in law."

The Court of Appeals, emphasizing the penultimate sentence in this paragraph, apparently interpreted this to mean that the crime of voluntary manslaughter is a prosecutorial catch-all—that if the State proves the commission of an unlawful killing but fails to prove malice (so as to prove murder), there is automatically, without more, proof of manslaughter.

This is not unqualifiedly true, as this court recognized long ago in *United States v. Densmore,* 12 N.M. 99, 104–105, 75 P. 31, 32 (1904):

> "The indictment in this case charges murder in the first degree and the jury returned a verdict of guilty of man-

slaughter. Under the laws of the United States and a decision of the Supreme Court of the United States, a defendant charged in an indictment with the crime of murder may be found guilty of the lower grade of the crime, viz., manslaughter, *provided of course that there is some evidence which tends to bear upon that issue. * * *"* (Emphasis added.)

In order properly to evaluate the reasoning of the *Burrus* case, supra, when we are considering the propriety of submitting the issue of manslaughter in the instant case, it is necessary to consider the evidence that was submitted in both cases. When we affirmed the conviction for voluntary manslaughter in the *Burrus* case, we did not have the same problem with the evidence which confronts us in the instant case. In *Burrus,* there was an abundance of evidence of provocation which is entirely lacking in this case.

 Under appropriate circumstances, i. e. under a charge of murder where there is evidence "that the defendant acted as a result of sufficient provocation," then a charge of manslaughter could properly be said to be "included" in a charge of murder, and, accordingly, it would not be error to submit N.M.U.J.I.Crim. 2.20 to the jury. However, it cannot seriously be maintained that manslaughter is invariably "necessarily included" in murder. Different kinds of proof are required to establish the distinct offenses. This is not a situation where the lesser-included-offense instruction was warranted by the evidence; it is error under *State v. Trujillo,* supra, to submit it contrary to the evidence, and such error is not cured by any reading of *State v. Burrus,* supra, where there was evidence that the killing was committed upon a sudden quarrel or in the heat of passion.

 Apparently the Court of Appeals concluded that by holding that provocation was not an "element" of manslaughter, it was removing the necessity of evidence of provocation to sustain a voluntary manslaughter conviction. This cannot be done. The New Mexico statute on its face and in its historical operation defines voluntary manslaughter as the unlawful killing of a human being without malice committed upon a sudden quarrel or in the heat of passion. In this sense, provocation is indeed an "element" of manslaughter, as indeed it is in the ordinary meaning of the word. Webster's Third New International Dictionary, Unabridged (1971), defines element in part as:

"* * * one of the constituent parts, principles, materials, or traits of anything: one of the relatively simple forms or units that enter variously into a complex substance or thing <bricks are ~s of a wall>: * * *: one of the simplest parts or principles of which anything consists or into which it may be analyzed: as * * * one of the factors or conditions playing a part in or determining the outcome of some process or activity <fine teamwork and hard hitting were key ~s in the team's pennant victory> * * *"

Whether termed factor or condition or constituent principle, it is clear that provocation is a part of voluntary manslaughter. Use of the word "element" is misleading, however, in that it suggests that it is necessarily part of the State's initial burden of proof. In this limited (and misleading) sense of the word, it is true that provocation will not in every case be an "element" of manslaughter. Provocation might be admitted, as is the case when the highest degree of homicide charged is that of voluntary manslaughter. See Committee Commentary to N.M.U.J.I.Crim. 2.21. It is not necessary for the disposition of this case to rule unequivocally either that provocation is or is not an "element" of voluntary manslaughter. There must be some evidence that the killing was committed "upon a sudden quarrel" or in the "heat of passion" in order for a conviction of voluntary manslaughter to stand; so much is clearly required by our statute.

We believe it is a cardinal principle in criminal law that a jury may not be permitted to return a verdict of guilty for the commission of a particular crime when there is no evidence that such a crime was committed. The only instructions which should be submitted to the jury are those that are based on legitimate evidence. In *State v. Pruett*, 27 N.M. 576, 203 P. 840 (1921), 21 A.L.R. 579 (1922), we held that it was reversible error to submit the issue of involuntary manslaughter where all of the evidence and all of the inferences therefrom showed that the killing was intentional, and cited, in support of the conclusion, the following (27 N.M. at 591–592, 203 P. at 845–846, 21 A.L.R. at 588–589):

"In *State v. Ash*, 68 Wash. 194, 122 Pac. 995, 39 L.R.A.,N.S., 611, the defendant was charged with murder and was convicted of manslaughter. The Supreme Court held that there was no element of manslaughter in the case, and that the giving of the manslaughter instruction was reversible error, saying:

" 'The state contends that, since the greater includes the less, manslaughter is included in murder in the first or second degree. Unquestionably this is true in law, but to be included in law is not sufficient; it must also be included in fact. We have so held in a number of cases.'

"The court then cites and quotes from two former Washington cases (*State v. Kruger*, 60 Wash. 542, 111 P. 769; *State v. Pepoon*, 62 Wash. 635, 114 P. 449), and goes on:

" 'Answering the rule of these cases, the state contends that, inasmuch as it is admitted that manslaughter is included in law in a charge of murder in the first degree, and as under our practice jurors are sole judges of the facts, the court cannot say, as a matter of law, there is no testimony to establish any of the lesser or included crimes, but must admit the legal inclusion and submit the inclusion in fact to the jury. This would be re-quired where there was any fact or facts to be determined by the jury. But the court is not required to submit any determination of a fact to a jury when there is no fact, nor to permit a jury to establish by its verdict a fact which there is no evidence to sustain. * * * We are therefore of the opinion that it was error for the court to submit an instruction involving the crime of manslaughter.' "

In *State v. Lopez*, 79 N.M. 282, 442 P.2d 594 (1968), where we were also considering a conviction for manslaughter, we again approved the rule as enunciated in *State v. Trujillo*, supra, by stating (79 N. M. at 286, 442 P.2d at 598):

"We fully recognize the rule to be as argued by appellant and as stated in *State v. Trujillo*, 27 N.M. 594, 203 P. 846 (1921), that it is error for the court to submit to the jury an issue of whether defendant was guilty of voluntary manslaughter when the facts establish either first or second degree murder, but could not support a conviction of voluntary manslaughter and, accordingly, upon acquittal of murder and conviction of voluntary manslaughter, a reversal and discharge of the accused is required. * * *"

It is to be noted that in *State v. Lopez*, supra, there was evidence which warranted the submission of an instruction on voluntary manslaughter, while in the instant case there was none.

The contention that N.M.U.J.I.Crim. 2.-20 violates due process, as contended by the defendant, need not be decided since we have determined that the instruction was erroneously given, and a reversal of the trial court's action must necessarily follow. It is interesting to note that the defense made no objection to the giving of such an instruction at the trial.

The last contention needing resolution is that the invalid conviction cannot be sustained by ch. 199, § 1, [1937] N.M. Laws 522, entitled "An Act Providing That Jury May Convict of Lesser Degree in Offenses

Consisting of Different Degrees, and That Such Conviction Shall Stand Though Evidence Shows Guilt of Higher Degree," reads in pertinent part as follows:

> " * * * any person found guilty of murder in the second degree or of any degree of manslaughter shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide; and no judgment shall be stayed, arrested or in any manner affected because the evidence shows or tends to show the accused guilty of a higher degree of the offense than that of which he is convicted."

The history of this provision is a tortured one. The 1937 legislature enacted it; the Supreme Court adopted the identical language as a rule of criminal procedure [§ 41–13–1, N.M.S.A.1953, (Repl. Vol. 6 1964)]. Ten years later the legislature attempted to repeal the 1937 statute (see ch. 175, § 1 [1947] N.M. Laws 364), but *Tindall v. Bryan,* 54 N.M. 112, 215 P.2d 354 (1949), held the attempted repeal invalid. In 1972, our rule compiled as § 41–13–1, supra, was repealed. The statute has never been repealed, although it has never been included in the compilation, and apparently remains in effect since *Tindall v. Bryan,* supra, declared the 1947 statute "inoperative to change, or in any way affect any of the laws sought to be thereby repealed."

Before its repeal, § 41–13–1, supra, was used on occasion to uphold manslaughter convictions where the defendant claimed that the evidence in the case proved either murder or no felonious homicide at all. *State v. Cochran,* 79 N.M. 640, 447 P.2d 520 (1968); *State v. McFall,* 67 N.M. 260, 354 P.2d 547 (1960); *State v. Griego,* 61 N.M. 42, 294 P.2d 282 (1956).

The Court of Appeals in the instant case cited these cases and the original text of the 1937 statute to bolster its argument that the defendant's conviction could be affirmed despite the lack of evidence of the

sudden quarrel or heat of passion that is the distinguishing feature of voluntary manslaughter.

This cannot be done. In the first place, neither *Cochran, McFall,* nor *Griego,* supra, stands for the proposition for which they are cited, i.e., that the 1937 statute could be used to sustain a jury verdict of guilty of voluntary manslaughter where there was no evidence that the crime had been committed. In all three of those cases, there was sufficient evidence of sudden quarrel or heat of passion (e.g., violent argument, assault, the brandishing of weapons) to require affirmance of the convictions regardless of the 1937 statute.

■■ In the second place, neither these New Mexico cases nor the 1937 statute nor any other authority could make lawful a conviction for a crime not shown by the evidence to have been committed. Such a result is contrary to the fifth amendment guarantees of due process of law and the explicit mandate of In re Winship, 397 U. S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and the more recent case of *Vachon v. New Hampshire,* 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974). In that case the United States Supreme Court reversed the defendant's conviction of willfully contributing to the delinquency of a minor because there was a complete lack of evidence tending to prove the "essential component" of willfullness. The court said (414 U.S. at 480, 94 S.Ct. at 665, 38 L.Ed. 2d at 669):

> "In these circumstances, the conviction must be reversed. 'It is beyond question, of course, that a conviction based on a record lacking any relevant evidence as to a crucial element of the offense charged * * * violate[s] due process.' *Harris v. United States,* 404 U.S. 1232, 1233, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971). (Douglas, J., in chambers); *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Johnson v. Florida,* 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968); see also

 

*Adderley v. Florida,* 385 U.S. 39, 44, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)."

So here, for the reasons already discussed, defendant's conviction may not be allowed to stand. Neither may any statute which purports to authorize an appellate court to sustain a conviction unsupported by the evidence be approved. Chapter 199, § 1, [1937] N.M. Laws 522, is invalid to the extend that it authorized a conviction for a lesser-included offense when no evidence is contained in the record to prove the essentials of the elements of the offense of which the defendant stands convicted.

 According to § 40A–2–3, *supra,* "voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion." According to *State v. Trujillo, supra,* a conviction of voluntary manslaughter where there is no evidence that there was a sudden quarrel or heat of passion must be reversed, and the defendant discharged. Therefore, defendant's conviction of voluntary manslaughter in this case, where there was no evidence of a sudden quarrel or heat of passion, must likewise be reversed and defendant discharged.

Evidence of a sudden quarrel or heat of passion, tending to show provocation sufficient to negate malice and reduce the degree of felonious homicide from murder to manslaughter is, by this analysis, indispensable to a conviction for voluntary manslaughter.

It is clear from the record that a verdict of guilty of murder would have been supported by substantial evidence. However, the jury acquitted the defendant of this degree of homicide, and, erroneously instructed, convicted him of a crime which he did not commit. This was an unfortunate mistake, but the remedy does not lie in affirming the unlawful conviction.

On the basis of the foregoing, we must hold that the judgment of conviction is erroneous; that the decision of the Court of Appeals should also be reversed and the cause be remanded with instructions to set aside the judgment of the trial court, dismiss the cause, and discharge the defendant.

IT IS SO ORDERED.

OMAN, C. J., and McMANUS and SOSA, JJ., concur.

EASLEY, J., not participating.