608 P.2d 1114
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Noe D. LUJAN, Defendant-Appellant.**

**No. 12540.**

Supreme Court of New Mexico.

March 19, 1980.

Martha A. Daly, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Arthur Encinias, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

This is a direct appeal from a conviction of Lujan for the first-degree murder of his former wife, Cecilia Lujan, and an acquaintance, Joey Trujillo. Lujan was sentenced to two consecutive life sentences.

The issues raised on appeal follow.

I. Whether the trial court properly disallowed the testimony of two witnesses concerning statements made by Lujan's former wife concerning her infidelity?

II. Whether the trial court erred by not instructing the jury on diminished capacity?

III. Whether the trial court erred by refusing to instruct on the lesser included offenses of second-degree murder and voluntary manslaughter?

IV. Whether the trial court committed reversible error in refusing to instruct the jury on the consequences of a verdict of not guilty by reason of insanity?

We affirm the conviction of the defendant.

The facts of the case are relatively simple. The defendant, after being taunted by his ex-wife, Cecilia, an hour earlier in the evening, returned to the location where he had last seen her and shot and killed her. Nearly an hour later, defendant appeared at the home of Joey Trujillo, a long-time acquaintance, and shot and killed him. Lujan later surrendered to the police.

At trial, testimony was introduced to the effect that Lujan was suffering from a slight frontal cortical atrophy, and that he had difficulty controlling his emotions. There was conflicting evidence on whether Lujan could control himself or his emotions on the night of the crime.

The defense theory of the case was that the defendant's mental condition, coupled with a build-up of stress over a period of time, resulted in his inability to stop himself from committing the acts of killing Cecilia and Joey. The build-up of stress was said to be caused by the discovery of his wife's infidelity, a divorce and worries about his children.

At one point, the defense called Ramona Santillanes, who in a tender of proof offered testimony that Cecilia had admitted to her, while still married to defendant, that she had become involved in an adulterous affair with Joey, and that the defendant knew about it. The court ruled that the testimony was irrelevant and was hearsay. Another witness, Rose Chavez, who was a health worker, offered testimony that Cecilia had contracted a venereal disease from someone other than defendant. The court ruled this testimony irrelevant.

I. The defendant argues that the proffered testimony was relevant because it tended to establish Cecilia's infidelity to defendant, making the existence of his emotional stress more probable. He further argues that the Santillanes tender falls within the Rule 804(b)(4) hearsay exception as a statement against interest. N.M.R. Evid. 804(b)(4), N.M.S.A.1978.

■ The determination of relevancy is a discretionary ruling by the district court which will not be disturbed absent an abuse of that discretion. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976). Here, there was no abuse of discretion because the testimony of both witnesses was merely cumulative of evidence of defendant's emotional stress and its causes already presented by other witnesses. *See State v. Lovato*, 91 N.M. 712, 580 P.2d 138 (Ct.App.1978), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). As such, it was not prejudicial and does not require reversal. *State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972). We therefore do not reach the question of whether the Santillanes tender was within the statement against interest exception to the hearsay rule.

II. The defendant next claims that the trial court erred in refusing to give a diminished capacity instruction based on an inability to form a deliberate intent. The Uniform Jury Instruction on insanity includes an optional sentence which states: "[e]ven if you find beyond a reasonable doubt that the defendant was sane, you must still determine if he had the ability to form the deliberate intention to take away the life of another." N.M.U.J.I.Crim. 41.00, N.M.S.A. 1978. The optional sentence is to be used when the defendant is charged with willful and deliberate first-degree murder and the evidence will support a finding of inability to form intent. N.M.U.J.I.Crim. 41.00 Use Note 3.

■ There is evidence in the record that the defendant was able to form a deliberate intention, with no evidence to the contrary. There was some expert testimony that the defendant was unable to control his emo-

tions and was unable to stop himself from committing the homicides. But the inability to form an intention is distinct from those, and unless there is evidence that the defendant could not have formed the requisite intent, the diminished responsibility instruction is improper. U.J.I.Crim. 41.10, which also instructs on diminished capacity was also properly refused, because its use is contingent on the use of the optional sentence discussed above. N.M.U.J.I.Crim. 41.-10, N.M.S.A.1978.

■ III. The defendant also argues that the trial court erred in refusing to instruct on the lesser-included offenses of second-degree murder and voluntary manslaughter. The defendant did not tender an instruction on second-degree murder, so the trial court did not err in failing to give the instruction. *State v. Gallegos,* 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978). The trial court also did not err in failing to give a voluntary manslaughter instruction. Section 30–2–3, N.M.S.A.1978, defines the crime:

Manslaughter is the unlawful killing of a human being without malice.

A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion.

■ The evidence must support a conviction of voluntary manslaughter before an instruction on the crime can be given. *Smith v. State,* 89 N.M. 770, 558 P.2d 39 (1976). Here, there was no evidence that the homicide was committed either in the heat of passion or upon a sudden quarrel. Though there is evidence that Cecilia taunted the defendant, this Court has held that words alone cannot be sufficient provocation to reduce a murder charge to voluntary manslaughter. *State v. Trujillo,* 27 N.M. 594, 203 P. 846 (1921). Additionally, the words were uttered nearly an hour before the shooting. Upon this evidence, we cannot say that a refusal to give a voluntary manslaughter instruction was error.

■ IV. The defendant's next claim is that the trial court committed reversible error in refusing to instruct the jury on the consequences of a verdict of not guilty by reason of insanity. The defendant would have us overrule *State v. Chambers,* 84 N.M. 309, 502 P.2d 999 (1972), where this Court held, *inter alia,* that a jury need not be instructed on the consequences of a verdict of not guilty by reason of insanity. We do not believe that the change in the law requested by defendant would be proper. The jury is not to concern themselves with the consequences of their verdict. They are to patiently and dispassionately weigh the evidence and arrive at a verdict in accordance with the law as given to them by the court. To instruct them on the consequences of their verdict would add an element to their deliberations that is not proper. The refusal of the requested instruction was not error.

AFFIRMED.

IT IS SO ORDERED.

EASLEY and FEDERICI, JJ., concur.