620 P.2d 887

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Julia MONTANO, Defendant–Appellant.**

**No. 4639.**

Court of Appeals of New Mexico.

Nov. 18, 1980.

Michael Gernsheimer, Santa Fe, for defendant–appellant.

Jeff Bingaman, Atty. Gen., Carol J. Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff–appellee.

## OPINION

LOPEZ, Judge.

Defendant appeals her conviction of second degree murder contrary to § 30–2–1, N.M.S.A.1978. We reverse.

Four issues are raised: 1. whether the trial court erred in refusing to give the jury a mandatory instruction concerning the voluntariness of a defendant's out of court statement, when the defendant first suggested the instruction be given one and a half hours after the jury had returned to deliberate; 2. and 3. whether the court erred in refusing to instruct on self–defense and voluntary manslaughter; and 4. whether certain of defendant's statements should have been suppressed as being contrary to *Miranda* and involuntary.

A little after 8:00 A.M. on the morning of September 25, 1979, Merciana Serna, and George Kimbrell went to the defendant's house in Roswell. They had come for some beer, which they drank while waiting for that morning's parade to start around 10:00. After the parade, they returned to the defendant's house until one of the bars opened early in the afternoon. When the two men came back to her house around 6 o'clock that evening, Kimbrell was so drunk that he passed out in the car. He joined the others in the house on awakening. The men remained at defendant's house, drinking, late into the night against her wishes. Serna was hostile. After defendant refused to cook supper for him, he knocked a hole in her bathroom wall. Serna spent most of the evening alone in the kitchen, drinking; Kimbrell was in another room with defendant. Finally, after midnight Kimbrell agreed to leave and take Serna with him. On learning they were to go, Serna got very angry and cursed defendant. He looked at her threateningly and started to rise from his chair near the kitchen table. Defendant then noticed the loaded gun she had left on the table. She had brought it to the kitchen earlier that night, she said, after hearing some noises outside which disturbed her. She was fearful of some teenagers who had threatened her before, and she knew the men were too drunk to defend her. The gun had been left on the table inadvertently, according to her. She had intended earlier to take it back with her to the other room. Seeing Serna look so menacing, she grabbed the gun and backed into the sink. The gun discharged, and Serna was killed.

Defendant called the police. Her first statement to the police, made when they arrived, was that Serna had shot himself. At the request of the police, defendant went to the police station at around 4:00 A.M. and gave a second statement to that effect. That morning at 11:00, a policeman returned to defendant's house. Before asking her any questions, she told him that she had killed Serna. This was her third statement. She was taken to the police department where she was given her *Miranda* warnings. A fourth statement, a taped confession, was then made. The tape was

admitted into evidence. About one and a half hours after the jury retired to deliberate, the defense attorney requested the court to instruct the jury on the voluntariness of the defendant's statement as required by N.M.U.J.I.Crim. 40.40, N.M.S.A. 1978. The court refused.

■ *Jury instruction.* The use note for N.M.U.J.I.Crim. 40.40 states that the instruction " * * * must be used when the court has made a determination that a statement by the defendant is voluntary and then submits it to the jury for consideration." In the present case, the judge did make a determination that defendant's confession was voluntary and the prosecution did introduce the tape at trial.

The fact that the defendant did not request the instruction be given until after the jury retired to deliberate is dispositive of the issue. Except for instructions pertaining to questions of law which are essential for a conviction of the crime charged, in order to preserve claimed error of failure to instruct, a party must tender a correct written instruction on the point of law he wishes charged before the jury is instructed. N.M.R.Crim.P. 41(d), N.M.S.A.1978. Although N.M.R.Crim.P. 43, N.M.S.A.1978 allows the trial court the discretion to give the jury additional or corrected instructions after they retire, it does not require that the instructions be given. The error claimed by defendant is not preserved on appeal because of her failure to timely request the instruction.

■ *Self–defense.* When the evidence permits, excuse or justification may be raised as a defense and decided by the factfinder. *State v. Noble,* 90 N.M. 360, 563 P.2d 1153 (1977). If there is evidence sufficient to raise a reasonable doubt in the jury's mind as to whether the defendant acted in self–defense, an instruction on self–defense must be given. *State v. Heisler,* 58 N.M. 446, 272 P.2d 660 (1954). For self–defense to succeed in excusing the defendant, the jury must find that the defendant was put in fear by an apparent danger of immediate death or great bodily harm, that the killing resulted from that fear, and that the defendant acted as a reasonable person would act in those circumstances. N.M.U.J.I. 41.41, N.M.S.A. 1978. An instruction on self–defense should not be given when there is no evidence that the defendant killed out of fear. *State v. Najar,* 94 N.M. 193, 608 P.2d 169 (Ct.App.), *cert. denied,* N.M., 614 P.2d 545 (1980). In the case before us there is evidence that Montano feared death or great bodily harm from Serna immediately before she shot him. Serna, seated in the kitchen had sworn at her and, in her words, "looked as if he wanted to kill me," when she had told him he and Kimbrell had to leave. He had been angry with her earlier that night—angry enough to knock a hole in her bathroom wall—and, a loaded gun was now lying on the table in the kitchen. Moreover, Serna was drunk. While one inference from this latter fact might be that he was incapable of harming defendant, another equally permissible inference could be that he was more irrational and violent than usual. There is evidence that Montano shot Serna out of fear. She said that she was "in shock, scared * * * (and) frightened." when the gun went off. A jury could have found that, in the circumstances, she acted reasonably. The jury should have been instructed on self–defense, because there was sufficient evidence to raise a reasonable doubt as to whether Montano acted from that motive.

■ *Voluntary manslaughter.* The defendant is entitled to have his theory of the case submitted to the jury under proper instructions where the evidence supports it. *State v. Benavidez,* 19 N.M.B.Bull. 889, N.M., 616 P.2d 419 (1980). An instruction on voluntary manslaughter should be given when there is sufficient evidence to sustain a conviction on the charge; *Id. See, State v. Lujan,* 94 N.M. 232, 608 P.2d 1114 (1980); but, it is error to instruct the jury on voluntary manslaughter when the facts do not establish that that crime was committed. *State v. Lopez,* 79 N.M. 282, 442 P.2d 594 (1968); *State v. Ramirez,* 89 N.M. 635, 556 P.2d 43 (Ct.App.1976); *see, State v. Smith,* 89 N.M. 770, 558 P.2d 39 (1976); *see gener-*

**236**

*ally, State v. Ortega,* 77 N.M. 7, 419 P.2d 219 (1966). "The difference between second degree murder and voluntary manslaughter is provocation." N.M.U.J.I.Crim. 2.20 N.M. S.A.1978. According to U.J.I.Crim. 2.20:

> Sufficient provocation can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and cause a temporary loss of self control in an ordinary person of average disposition. The provocation must be such that an ordinary person would not have cooled off before acting.

Words alone are not sufficient provocation to reduce a murder charge to voluntary manslaughter. *Lujan; State v. Castro,* 92 N.M. 585, 592 P.2d 185 (Ct.App.), *cert. denied,* 92 N.M. 621, 593 P.2d 62 (1979). The jury should not be instructed on voluntary manslaughter when there is no evidence of the occurrence of a sudden quarrel, or that the act was done in the heat of passion, or on sufficient provocation. *Ramirez.*

■ In order to determine if the instruction on voluntary manslaughter was properly refused, we must examine the evidence and decide whether it could support a conviction for voluntary manslaughter. We believe the evidence is such that a jury could find that the defendant's action arose in a sudden quarrel, and was the result of sufficient provocation. The evidence that Serna became angered on being asked to leave, looked threateningly at defendant, and started to rise from his chair suggests a sudden quarrel. It is also possible to infer from defendant's testimony that Serna made a move toward the gun. Considering that Serna had been drinking all that day and night, that he and Kimbrell had been at defendant's house for over six hours against her will, and that he had, in a fit of anger at defendant, put a hole in her wall earlier that night, a jury could reasonably find defendant had been aroused to anger, rage, fear, sudden resentment, terror or other extreme emotion when Serna swore violently at her and started to rise with a loaded gun not far from him in the kitchen. In other words, in these circumstances, a jury could find sufficient provocation to reduce murder to manslaughter.

The evidence supporting provocation is much stronger here than in *Lopez,* where the Supreme Court upheld a conviction of voluntary manslaughter. In *Lopez,* one boy shot another when the latter came over and opened the car door behind which the former was sitting. Earlier that night, the victim had sworn at the defendant. The defendant later told the police that the victim was trying to beat him up at the time of the shooting, by which he probably meant that he feared this was about to happen. The jury must have found this fear reasonable under the circumstances. The evidence in the instant case provides even more excuse for fear—the victim's anger at defendant for asking him to leave, his intoxicated state, and his proximity to a gun. Here the evidence is even stronger than in *Lopez.*

The case before us does not involve insulting words alone. Action accompanied those words. Serna looked menacingly at defendant, started to rise, making a possible move toward the gun. Considering the actions and words of the participants in light of their physical and mental states that night, there is sufficient evidence to support a conviction of voluntary manslaughter, should a jury so find. An instruction should have been given on this issue.

■ Defendant's insistence that she did not intend to shoot Serna does not defeat her right to a jury instruction on voluntary manslaughter. As the Supreme Court states in *Lopez*:

> We have not overlooked appellant's argument that the killing was accidental, based upon his testimony that he did not intend to pull the trigger, and didn't intend to shoot. That an accidental killing will not support voluntary manslaughter goes without saying. However, just because the appellant testified to this effect does not make it so.

*Id.* at 285; 442 P.2d at 597. The trial court erred in refusing defendant's instructions

on voluntary manslaughter, and self–defense.

*Miranda warnings.* Defendant argues that because of the number of police at her home and because some of the officers suspected a homicide from the very beginning, defendant was in custody when she made her first statement. She contends that the presence of police officers at her home and the taking of the second statement at the police department resulted in subtle coercion on her. It is her position that *Miranda* warnings should have been issued prior to the first two statements, and that the third and fourth statements are therefore tainted.

█ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self–incrimination. Usually these safeguards involve informing the suspect of certain constitutional rights. General on–the–scene questioning or other general questioning of citizens in the fact-finding process is not considered custodial, however, and a person in these circumstances need not be informed of his rights before being questioned. *Id.* Neither is all questioning done at the police station custodial. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Following these cases, this court has said that *Miranda* applies only when a person is in custody or deprived of his freedom of action in any significant way. *State v. Harge*, 94 N.M. 11, 606 P.2d 1105 (Ct.App.1979). In that case we said that it was not necessary for an officer to give *Miranda* warnings to a person who is not in custody, but who answers questions at the station office.

█ At the time of her first statement, defendant was at home, the scene of Serna's death; the police had just arrived. Questioning here falls into the category of general questioning of citizens in the fact-finding process. The police were not required to give *Miranda* warnings. Al-

though defendant's second statement to the police was taken at the station, defendant was not in custody, or deprived of her freedom of action in any significant way. After the questioning, she returned home. Again, *Miranda* warnings were not necessary at that time.

There being nothing improper with the taking of defendant's first two statements, these statements could not taint the subsequent ones. The court did not err in refusing to suppress defendant's confession.

The judgment of the trial court is reversed because of the court's failure to instruct on voluntary manslaughter and self–defense, as requested by the defendant. The case is remanded for a new trial consistent with this opinion.

IT IS SO ORDERED.

HENDLEY, J., concurs in result only.

ANDREWS, J., concurs in part and dissents in part.

ANDREWS, Judge (concurring in part, dissenting in part).

I, like the majority, am of the opinion that the evidence before the jury in this case could have supported a conviction for voluntary manslaughter. The trial court erred in refusing this requested instruction. However, I believe the self–defense instruction was properly refused.

In defining a killing in self–defense, U.J. I.Crim. 41.41 requires that there be an appearance of immediate danger to the defendant; that the defendant, in fact, be put in fear by the apparent danger and that defendant killed because of that fear. *State v. Najar*, 94 N.M. 193, 608 P.2d 169 (Ct.App.1980). While the record here includes some evidence concerning self–defense, in my opinion it is insufficient for submission of self–defense to the jury.

Here, as in *State v. Najar, supra,* the evidence most favorable to a self–defense instruction was in statements made by defendant–that Serna had sworn at her and, gave her "a dirty look, as if he would kill" her shortly before she shot him. But in

view of the fact that decedent was so drunk that he couldn't get up out of the kitchen chair, there is no evidence of apparent danger. Nor is there evidence or inference that defendant was put in fear by the apparent danger or that defendant shot because of fear. Defendant may have been afraid, but not of Serna. The trial court was correct in refusing the self–defense instruction.