856 P.2d 569

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**George UNGARTEN, Defendant–
Appellant.**

**No. 14039.**

Court of Appeals of New Mexico.

June 10, 1993.

Michael Casey, Albuquerque, for defendant-appellant.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Defendant appeals his conviction of child abuse (no death or great bodily harm) following a jury trial. Two issues are presented on appeal: (1) whether the charge of child abuse was supported by substantial evidence; and (2) whether the trial court erred in instructing the jury as to the elements of child abuse where Defendant has asserted a claim of self-defense. For the reasons discussed herein, we reverse.

*FACTS*

The events giving rise to this case grew out of an altercation between Defendant and his neighbors. Defendant and Mary Hooper, Defendant's girlfriend and housemate, lived in one side of a duplex; the nearly eleven-year-old child, alleged to have been the victim of child abuse, and the child's mother lived in the adjoining duplex. On May 4, 1991, Defendant rebuked the child and told him in a stern manner to keep the gate to the back yard closed. The child reported this admonition to his mother, saying, " 'George scared me,' " and " 'He just scared me real bad.' " The mother, accompanied by the child, went next door to speak to Defendant about the incident. She knocked on Defendant's front door but got no response.

At this point, the child's father drove up and the mother informed her ex-husband that her neighbor had frightened their son. The child's father then went to Defendant's front door and began knocking on the door. Defendant was unable to find the key to open his front door and both he and the child's father exchanged profane remarks through the locked door. Hooper testified that the child's father threatened Defendant and demanded that Defendant open the door. Shortly thereafter, Defendant exited the house through the back door carrying a knife. Defendant testified he took the knife for self-defense. Defendant demanded that the child and the child's parents leave the property, and began gesturing with the knife in an angry manner. During the course of the argument, the father picked up a tree limb. Hooper testified that the father voiced threats toward Defendant and that she telephoned the police. Defendant testified that when he first exited his house he held the knife at his side, and that he only raised the knife after he had been struck on the arm with a tree limb picked up by the child's father.

In contrast to the testimony presented by Defendant, the child's mother and father testified that, as the incident progressed, Defendant became more agitated and began waving the knife around in a threatening manner, thereby menacing both the child and his parents; and that Defendant used the knife to cut at a trellis and vines near the front porch of his residence.

The child testified that his father held the tree limb in front of his body and fended off "[o]ne or two" jabs by Defendant. Although the child was not physically harmed by Defendant, the child testified that at one point during the altercation the knife wielded by Defendant came close to his body. The child testified that Defendant waved the knife around and he felt "like my body and life was in danger." During most of the confrontation, the child was standing several feet behind his father and was later directed to get inside the father's van that was parked in the street. When Defendant drew back toward his house, the child's father followed him back to the porch, trying to get Defendant to come out from the front of his residence.

Witnesses at the trial included the child, the child's father and mother, two neighbors, Defendant, Hooper, and four police officers. Testimony of the neighbors corroborated the fact that Defendant was acting in a loud, angry, and belligerent manner toward the child's father. Defendant testified that during the events in question

his attention was focused on the child's father, not the child, and he denied endangering or harming the child.

After the police arrived, Defendant was arrested and charged with three counts of aggravated assault (consisting of one count each against the child, the father, and the mother), and one count of child abuse. Following a jury trial, the jury acquitted Defendant of each of the three counts of aggravated assault on the child and his parents, but convicted Defendant of child abuse.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that since the child was not physically injured or touched by him during the events in question, there was insufficient evidence to establish that he threatened or endangered the child so as to warrant submission of the charge of child abuse to the jury.

■ In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we review the record to determine whether substantial evidence, either direct or circumstantial, exists such that a rational jury could have found proof beyond a reasonable doubt of facts with respect to every element essential to a conviction. *State v. Garcia,* 114 N.M. 269, 273–74, 837 P.2d 862, 866–67 (1992); *see also State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). In applying this standard we view the evidence in a light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences in favor of the verdict of the jury. *State v. Cotton,* 109 N.M. 769, 771, 790 P.2d 1050, 1052 (Ct.App.), *cert. denied,* 109 N.M. 751, 790 P.2d 1032 (1990).

■ NMSA 1978, Section 30–6–1(C) (Cum.Supp.1992) has been characterized as a strict liability statute. *State v. Leal,* 104 N.M. 506, 509, 723 P.2d 977, 980 (Ct.App. 1986). Proof of criminal intent is not required to establish the crime of child abuse. *State v. Fuentes,* 91 N.M. 554, 557, 577 P.2d 452, 455 (Ct.App.), *cert. denied,* 91 N.M. 610, 577 P.2d 1256 (1978). A defendant may also be convicted of child abuse, even though the child does not suffer a physical injury. *See* § 30–6–1(C)(1) (child abuse may exist where a defendant places a child "in a situation that may endanger the child's life or health"); *see also People v. Harris,* 239 Cal.App.2d 393, 48 Cal.Rptr. 677, 680–81 (1966) (actual injury to a child need not be proven where a statute declares it a crime to cause or permit a child to be placed in a situation dangerous to the child's life or health); *see generally* Milton Roberts, Annotation, *Validity and Construction of Penal Statute Prohibiting Child Abuse,* 1 A.L.R.4th 38, § 15(c), at 86 (1980).

■ In order to prove the offense under Section 30–6–1(C)(1), the State is required to prove beyond a reasonable doubt that Defendant "knowingly, intentionally or negligently, and without justifiable cause, ... placed [the child] in a situation that *may* endanger the child's life or health[.]" (Emphasis added.) The term "may," as used in Section 30–6–1(C)(1), does not connote a mere possibility, however remote, that harm may result from Defendant's acts; instead, we conclude that the legislature intended the phrase "may endanger" to convey a more restrictive meaning in child abuse cases, i.e., "a reasonable probability or possibility" that the child will be endangered. *See State v. Fisher,* 230 Kan. 192, 631 P.2d 239, 242 (1981) (word "may" as used in Kansas child abuse statute given restrictive construction, indicating reasonable probability or likelihood the child would be placed in situation whereby that child's life or health will be endangered); *cf. State v. Roybal,* 115 N.M. 27, 33, 846 P.2d 333, 340 (Ct.App.), *cert. denied,* 114 N.M. 550, 844 P.2d 130 (1992) (where the defendant left his child in his car with his wife while he bought a minor amount of heroin nearby, there was insufficient evidence to indicate that the child, from mere proximity to the drug transaction, "was in fact placed in danger" to support child abuse conviction).

■ Both the child and his parents testified that Defendant brandished the knife in a threatening and menacing manner. The child also testified that, at the beginning of

the altercation, he was standing by his father and Defendant thrust the knife in such manner that he could not discern whether it was directed at him or his father.

Under the standard of review and statutory analysis discussed herein, we think reasonable minds could differ on whether Defendant's acts placed the child in a situation whereby a reasonable probability existed that the child's life or health would be endangered. *Cf. State v. Gonzales*, 95 N.M. 636, 639, 624 P.2d 1033, 1036 (Ct. App.) (conflicts in evidence and weight to be accorded to the testimony of witnesses are to be resolved by finder of facts), *overruled on other grounds by Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981). Thus, we conclude that Defendant's claim of lack of substantial evidence to support the charge of child abuse is without merit and the trial court did not err in submitting this issue to the jury. Resolution of this issue, however, is not determinative of Defendant's guilt or innocence as to the charge of child abuse. We also address Defendant's second issue relating to the propriety of the instructions.

## II. *REJECTION OF REQUESTED JURY INSTRUCTION*

Defendant tendered a proposed jury instruction that his acts in carrying and brandishing a knife during the incident in question were done in self-defense and that "[t]here was an appearance of immediate danger of bodily harm to the [D]efendant as a result of [the child's father] picking up a club or stick to be used as a weapon and ... striking [Defendant] with the weapon[.]" Although the trial court gave another requested defense instruction relating to Defendant's claim of self-defense to the charge of aggravated assault upon the child's father, the court refused Defendant's proposed self-defense instruction relating to the child-abuse charge. The refused instruction would have allowed the jury to consider Defendant's contention that his acts and use of the knife in protecting himself from the father could also be considered in connection with the State's

assertions that his acts were without justifiable cause and unlawfully endangered the child's "life or health."

The State contended at trial that Defendant was not entitled to a self-defense instruction incident to the charge of child abuse and that the jury was only entitled to consider the claim of self-defense incident to the charge of aggravated assault with a deadly weapon upon the child's father. Defendant's counsel submitted a requested self-defense instruction patterned upon SCRA 1986, 14–5181, arguing that Defendant proffered such instruction "because I don't believe deadly force was used." According to the testimony of the child and his parents, during most of the time Defendant and the child's father were confronting each other, the child was beside or remained some distance behind his father. The child testified, however, that he was standing near his father at one point when Defendant jabbed the knife in such manner that it came within a close proximity to his body, and he could not tell if Defendant intended to direct the weapon toward him or his father.

The version of events given by Defendant and Hooper sharply contrasted from that related by the child and his parents. Defendant testified that because he did not know the child's father or who he was, and because the father made threats and demanded that he open the door to his home, he took a knife for protection when he went outside. Defendant also stated that he held the knife down at his side and did not raise it or point it at the father until the child's father picked up a "log or club" and hit him, causing him to partially fall.

Hooper testified that at the beginning of the confrontation she heard the child's father say in a loud voice, " 'He better open the door, I am going to kick his [f——] ass.' " She also stated the father told Defendant, " 'I am going to bash your brains in.' " Defendant denied assaulting, threatening or abusing the child and testified that his actions and brandishing of the knife were done in response to his fear that he was in danger of bodily harm from the

child's father after he had been struck by the log or limb.

If there is sufficient evidence to raise a reasonable doubt as to whether Defendant's use of the knife was in self-defense, it was error to limit the instruction on self-defense solely to the charge of aggravated assault upon the father. *See State v. Allison,* 16 Kan.App.2d 321, 823 P.2d 213, 215 (1991) (self-defense may under certain circumstances be raised as a defense to a charge of child abuse); *see generally State v. Heisler,* 58 N.M. 446, 455, 272 P.2d 660, 666 (1954); *State v. Gallegos,* 104 N.M. 247, 249, 719 P.2d 1268, 1270 (Ct.App.1986). As observed by our Supreme Court in *Heisler,* "where self-defense is involved in a criminal case and there is any evidence, although slight, to establish [such defense], it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly on all phases of the law on [that] issue...." *Id.,* 58 N.M. at 455, 272 P.2d at 666.

■ Based on the record, resolution of the issue of whether Defendant's acts in using the knife were justified in defending himself presents a factual issue to be determined by the jury. *State v. Montano,* 95 N.M. 233, 235, 620 P.2d 887, 889 (Ct.App. 1980). Thus, we conclude that the trial court erred in limiting Defendant's requested instruction on self-defense solely to the issue of whether Defendant committed aggravated assault upon the child's father. Under the evidence here, Defendant was entitled to have the jury determine whether his acts, which were alleged to have endangered the child, were justified as self-defense in protecting himself from injury by the father. *Id.*

■ In order to establish the offense of child abuse, not resulting in death or great bodily harm, as charged in the indictment, the State was required to prove beyond a reasonable doubt each of the elements of the offense, including the fact that Defendant's use of the knife was *"without justifiable cause."* (Emphasis added.) As noted in the committee commentary to SCRA 14–5181 (self-defense, nondeadly force), the words "without excuse or justification" are the equivalent to the word "unlawful," and identify "a defense theory, i.e., even if all of the acts constituting the crime were committed, the act is otherwise excusable or justifiable. Cf. Section 30–2–8 NMSA 1978 [Repl.Pamp.1987]". Similarly, our Supreme Court, in *State v. Pierce,* 110 N.M. 76, 80, 792 P.2d 408, 412 (1990), observed that the term "unlawful," as used in NMSA 1978, Section 30–9–13 (Cum.Supp. 1992), prohibiting criminal sexual contact of a minor, means "without legal justification or excuse." Thus, we conclude that in a prosecution for child abuse where a defendant is charged with having intentionally or negligently endangered the life or health of a child, if the evidence otherwise supports a claim that a defendant's acts were carried out in self-defense, the defendant is entitled to have the jury consider his claim of self-defense as justification for his acts. *See State v. Trammel,* 100 N.M. 479, 481, 672 P.2d 652, 654 (1983) (where evidence at trial supports an instruction on a defense raised by accused, failure to instruct constitutes reversible error).

The language of Section 30–6–1(C), requiring proof that Defendant's acts were "without justifiable cause," requires the State to negate Defendant's claim that he acted in self-defense, where Defendant has presented evidence warranting submission of that defense to the jury. *Id.; cf. Santillanes v. State,* 115 N.M. 215, 222, 849 P.2d 358, 365 (1993) (trial court erred in failing to instruct jury on standard of criminal negligence).

We conclude that the trial court erred in refusing Defendant's tendered instruction on self-defense and precluding the jury's consideration of such defense incident to the charge of child abuse.

### CONCLUSION

Defendant's conviction for child abuse is reversed and the cause is remanded for a new trial.

IT IS SO ORDERED.

CHAVEZ and BLACK, JJ., concur.